**STATE of Maine**

v.

**Bruce LEE.**

Supreme Judicial Court of Maine.

Aug. 9, 1979.

---

984

Thomas E. Delahanty, II, Dist. Atty., Auburn, J. Scott Davis (orally), Senior Asst. Dist. Atty., South Paris, for plaintiff.

Samuel A. Wilkinson (orally), South Paris, for defendant.

Before McKUSICK, C. J., and ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

■ Defendant appeals from judgments of conviction entered in the Superior Court (Oxford County) upon the verdict of a jury finding him guilty, as charged in separate counts of an indictment, of the crimes of assault and aggravated assault, 17–A M.R.S.A. §§ 207, 208 (Supp.1978). On appeal, defendant contends that the Superior Court wrongly refused to dismiss the indictment in response to defendant's motion for such dismissal which claimed that defendant's trial would be held too late to be the "speedy trial" constitutionally guaranteed him. U.S.Const., amendments XIV and VI; Me.Const. art. I, § 6. The basis of defendant's contention is that eleven months elapsed after defendant was apprehended on January 18, 1978, before he went to trial on December 28, 1978.[1]

We deny the appeal. In all of the circumstances appearing here we, like the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514, 536, 92 S.Ct. 2182, 2195, 33 L.Ed.2d 101 (1972), are unwilling to

> "rule that . . . defendant was denied . . . [his] constitutional right [to speedy trial] on a record that strongly indicates, as does this one, that . . . [he] did not want a speedy trial."

The events constituting the assaults for which defendant was convicted occurred in May and June of 1976. Defendant was indicted on June 14, 1976, and a warrant

---

1. Defendant also claims that it was reversible error for the presiding Justice to fail to give the jury an instruction that the medical testimony that the victim had been "assaulted, stepped on in the stomach, [and] hit on back of [the] neck with [an] iron pipe" was admitted in evidence only to show the basis for diagnosis and treatment, that it was not substantive evidence that an iron pipe, as alleged, had been used to commit the assault. However, defendant said nothing about the need for such cautionary instruction either when the evidence was offered or when the jury was instructed, and after the completion of the charge defendant neither objected to the charge as given nor requested the presiding Justice to add the cautionary instruction as part of the charge. See Rule 30(b) M.R.Crim.P. Hence, the error claimed, if any, can be open for appellate cognizance only if this Court finds that there was manifest error which caused the serious injustice of an unfair trial. See *State v. Pomerleau*, Me., 363 A.2d 692 (1976); Rule 52(b) M.R.Crim.P.

We note that there was *no* error by the presiding Justice, let alone error so serious as to cause an unfair trial. The statement involved was an entry on the victim's chart made by a nurse who took a history. It was therefore admissible under Rule 803(4) M.R.Evid. for the truth of the matter asserted, as having been "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." See R. Field & P. Murray, *Maine Evidence*, 203–04 (1976).

was then issued for his arrest. Defendant was not apprehended until January 28, 1978 when he was arrested in Texas after having been identified as a fugitive from the outstanding Maine arrest warrant. He was arraigned the same day before a Texas Justice of the Peace and was committed to jail to await extradition. The Texas authorities apparently then alerted their counterparts in Maine to defendant's presence in Texas, for on January 30th the Oxford County Sheriff's Office prepared the documents necessary for extradition which referred to defendant as being in the custody of the Del Rio, Texas Police Department. The following day, the District Attorney (for the District which includes Oxford County, Maine) addressed a Requisition for Extradition to the Governor of Texas. On February 15th, certified copies of the indictment, warrant and affidavit accompanied a formal demand by the Governor of Maine to the Governor of Texas to have defendant delivered to specified law officers

"authorized and empowered to receive and convey him to the State of Maine, there to be dealt with according to Law."

The Governor of Texas issued a warrant on February 28th directing Texas law enforcement personnel "to deliver BRUCE LEE when arrested" to the designated Maine officers so that he could be returned to Maine.

Despite the completion by February 28th of everything required for defendant to be extradited to Maine, defendant continued under incarceration in Texas without any further action as to him by either Texas or Maine authorities. This happened in part, because, as indicated by uncontroverted testimony given at the hearing on defendant's motion to dismiss the indictment, the Texas authorities neglected to inform the Maine authorities that extradition was in order. In any event, whatever the reason, after defendant had been apprehended in Texas until he was re-arraigned in Texas, he was detained from January 28th to March 13th. This detention indicated a violation of Section 15 of Article 51.13 of the Texas Code of Criminal Procedure, which limits to thirty days the period an accused may be ordered detained for purposes of extradition.

On March 15, 1978, two days after he was re-arraigned, defendant filed in a Texas trial court a petition for a writ of habeas corpus, asserting that his continued detention in Texas was illegal. A hearing was had on the petition on March 21, 1978. An additional four months elapsed before the court, on July 20, 1978, rendered its decision that defendant had been lawfully arrested, properly arraigned and lawfully committed to jail to await extradition. As part of its decision, the court acknowledged that it had been unlawful for defendant to be kept incarcerated from January 28th to March 13th without re-arraignment, but the court held that the re-arraignment on March 13, 1978, prior to the filing of the writ of habeas corpus, rendered moot the antecedent illegality and caused the subsequent detention from which defendant was seeking to be released to be a lawful detention.

Defendant thereupon appealed the denial of the writ of habeas corpus to the Texas Court of Criminal Appeals, claiming irregularities in the arraignment proceedings. That court rejected his contentions on their merits and observed, in addition, that

"at the time of the habeas corpus proceedings the appellant was being held by virtue of the Governor's Warrant and not by virtue of any earlier extradition proceedings."

The opinion embodying this ruling was delivered October 11, 1978, and the court's mandate issued October 27, 1978.

Within roughly two weeks thereafter, defendant was returned to Maine. He appeared at bail proceedings conducted on November 13, 1978. On December 4, 1978 he filed his motion asking dismissal of the indictment, which the Superior Court denied on December 18, 1978. Ten days later, defendant went to trial before a jury.

From the foregoing detailed history of proceedings defendant has isolated but one factor as support for his claim that he was denied speedy trial. Pointing to the interval of four months between the Texas trial court's evidentiary hearing and its decision

on his petition for habeas corpus relief, defendant maintains that this was an "unreasonable" and "unconscionable" delay requiring "on its face" reversal of his conviction and dismissal of the indictment since, says defendant, the State of Maine was "the cause" of his arrest and incarceration in Texas and therefore must bear responsibility for the delay occasioned by the Texas proceedings.

Replying, the State of Maine says, first, that defendant's position is basically self-defeating insofar as defendant himself was the source of the delay of which he now complains; defendant brought the habeas corpus proceedings that produced the delay of four months which defendant now claims was an "unconscionable" delay. On this basis, the State further argues that *all* of the time attributable to defendant's efforts to end his detention in Texas and thereby avoid trial in Maine must, as a matter of law, be found to lack even the potential of being an "unconstitutional" delay and hence should be discounted, as if it had never occurred.[2] The State would have us hold, too, that the remaining 45-day period of delay in Maine until defendant was brought to trial cannot qualify as the "presumptively prejudicial" delay which, it says, must be deemed a prerequisite to "trigger" the plenary analysis delineated in *Barker v. Wingo, supra. See State v. Smith*, Me., 400 A.2d 749, 752 n. 3 (1979).

It is not plain that such an approach, in terms of whether a full scale *Barker v. Wingo* balancing evaluation must in some particular manner be "triggered", can be squared with some language in *Barker v. Wingo* strongly indicating that any delay (not *de minimis* strictly in terms of time duration) in affording a defendant a trial should be subjected to the plenary *Barker v. Wingo* analysis. The opinion emphasizes the "vague", the "amorphous", the "slippery" quality of the right of speedy trial as militating against efforts to "quantify" it. *Id.* 407 U.S. at 521–23, 92 S.Ct. 2182. Also

stressed are the points that the *"ad hoc"* nature of the inquiry necessitates a "functional analysis", *id.* at 522, 530, 92 S.Ct. 2182, and that the close interrelation of the factors bearing on the resolution of claimed violations of the right of speedy trial make it "unique in its uncertainty." *Id.* at 529, 530–33, 92 S.Ct. 2182.

With these conceptual difficulties in mind, we note that the State has made the suggestion that we use a "triggering" approach, here, without having undertaken to analyze, either in its brief or at oral argument, the contours, scope or implications of the suggestion. Moreover, we find that we arrive at the same result in this particular case whether we use the "triggering" approach suggested by the State or make a full-scale *Barker v. Wingo* analysis. We therefore leave to another day whether it may be held that the *Barker v. Wingo* plenary analysis must be "triggered", and if so what circumstances bear on the "triggering."

■ We decide the case before us by undertaking the full-scale analysis described in *Barker v. Wingo*, an *"ad hoc"* balancing of four factors: the length of delay, the reason for delay, the defendant's assertion of his right, and the prejudice, if any, to the defendant. *Barker v. Wingo, supra*, at 530, 92 S.Ct. 2182; *State v. Smith, supra*, at 752; *State v. Fernald*, Me., 397 A.2d 194, 196 (1979).

■ While the overall delay from arrest to trial was substantial, here, we find only a fraction of it chargeable against the State. Defendant contends, and we agree, that by February 28, 1978, after the passage of some 31 days from his arrest, a reasonable time for completion of extradition had elapsed. Since the State of Maine was obliged, in seeking to prosecute defendant, to make a diligent effort to secure the extradition of defendant, *see State v. Brann*, Me., 292 A.2d 173, 177 (1972), the

---

**2.** We have no concern with the earlier period from the date of indictment to the date of defendant's arrest in Texas. During that time defendant was outside the jurisdiction of the State of Maine, with his whereabouts, so far as appears, being unknown. *See State v. Hale*, 157 Me. 361, 172 A.2d 631 (1961).

delay of fifteen days after February 28, 1978 during which the Maine authorities took no action to seek to return defendant to Maine must be held chargeable against the prosecution.

Yet, since the State had promptly initiated rendition proceedings and apparently was standing ready to receive, and try, defendant upon notification from the Texas authorities that extradition was in order, we accord such delay only the most minimal weight as a balancing factor. We do this more particularly because after the passage of fifteen days chargeable against the State of Maine, defendant filed his petition for habeas corpus relief from the Texas courts. No delay from this point until the conclusion of defendant's habeas corpus appeal can be counted in the balance against the State of Maine since it was defendant who effectively precluded any prosecution in Maine by seeking relief from the courts of the asylum State of Texas. Until extradition was completed there could be no trial: defendant by means of his habeas petition, interposed objections to his continued detention which must be taken as objections to the extradition for which he was being detained. He thereby adopted a stance so fundamentally at odds with any notion of speedy trial that it would be "unconscionable", see Commonwealth v. Loftis, 361 Mass. 545, 281 N.E.2d 258, 261 (1972), to permit him to reverse his field at this juncture in order to profit from the inclusion (among the periods of delay we must assess for speedy trial violation purposes) of any delay resulting from his own counseled invocation of the rights and potential remedies available to him from the judicial system of any forum. This root principle we have expressed in closely analogous contexts, see, e. g., State v. Smith, supra, at 753 (delay occasioned by defendant's suppression motion cannot be charged against

the State); State v. Lewis, Me., 373 A.2d 603, 609 (1977) (delays attributable to defendant's continuances for pre-trial purposes and to other circumstances beyond the control of the prosecution "substantially deflate" claim of speedy trial violation). The principle has appropriate application to the proceedings in Texas initiated by defendant in hopes of avoiding trial altogether.

Defendant's claim gains nothing when we consider the other factors to be weighed in the Barker v. Wingo balancing process: the circumstances that surround the defendant's assertion of his right to speedy trial and those that bear on any prejudice that may have inhered in the delay chargeable to the prosecution. As we noted in Smith, supra, at 754

"the timing of . . . [defendant's] demand does not support a conclusion that . . . [he] was suffering any prejudice from delay of his trial at the time of his assertion or that he foresaw possible prejudice."

Beyond the 15-day unexplained delay in Texas that we have charged (but with minimal weight) against the State, only 24 more days had elapsed (from defendant's return to Maine on November 11, 1978 to his December 4, 1978 motion to dismiss which first asserted deprivation of the speedy trial right) for which the State was responsible. This slight "delay", if it be that,[3] loses significance, as possibly weighing in defendant's favor, when it is viewed in combination with the "closely related . . . other factors", Barker v. Wingo, supra, 407 U.S. at 531, 92 S.Ct. 2182: (1) an overall delay attributable almost entirely to defendant's own trial-avoidance activities, and (2) defendant's omission to allege, either before the presiding Justice or before us,

---

**3.** Since this appeal concerns a pre-trial motion to dismiss we do not consider any "delays" that may have followed the motion. We note, however, that two days after his return to Maine defendant had been given a preliminary hearing; arraignment followed four days later; and hearings were had upon his December 4, 1978 motions on December 18, 1978. Ten days later he went to trial. Nowhere in the course of this case, with the exception of the "technical" violation that from February 28, 1978 to March 15, 1978 Maine might have pressed more diligently for extradition, does this State appear to have "delayed."

that he was in any manner prejudiced by any of the delay before he went to trial.[4]

Of the three interests identified by *Barker v. Wingo, supra,* at 532, 92 S.Ct. 2182, as comprising the delay-related prejudice to a defendant guarded against by the speedy trial guarantee, none has been implicated here. Absent was any "oppressive pretrial incarceration", in the sense of "an unnecessary period of confinement for which the prosecution was to blame." *Fernald, supra,* at 196. It was within defendant's power to minimize any anxiety and concern he may have suffered from being charged with crime, *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. 2182; after being indicted, defendant could have chosen to remain in, or return to, Maine, or after he was arrested in Texas defendant could have refrained from contesting the proceedings by which his return to Maine was sought. His absence from Maine, prolonged by his actions once he had been incarcerated in Texas, also shifted from the State the responsibility "to limit the possibility that the defense . . [would] be impaired." *Id.* at 532, 92 S.Ct. at 2193. As we indicated above, there has been no intimation to us that any such impairment in fact materialized, and our independent review of the record persuades us overwhelmingly that there was none. Defendant was tried in a manner consistent with his right to enjoy a speedy trial, as guaranteed him by the Fourteenth and Sixth Amendments to the Constitution of the United States and article I, section 6 of the Constitution of Maine.

The entry is:

Appeal denied.

Judgments of conviction affirmed.

POMEROY and DELAHANTY, JJ., did not sit.

---

**4.** In *Barker v. Wingo, supra,* at 531–32, 92 S.Ct. at 2192, the Court emphasizes:

"Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that

he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."