STATE of Maine

v.

**John S. DUDLEY.**

Supreme Judicial Court of Maine.

Argued March 4, 1981.

Decided July 30, 1981.

Janet T. Mills, Dist. Atty., John C. Sheldon (orally), Asst. Dist. Atty., South Paris, for plaintiff.

John S. Jenness, Jr. (orally), South Paris, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN * and CARTER, JJ.

NICHOLS, Justice.

Found guilty by an Oxford County jury on two counts of Class A robbery,[1] the Defendant was sentenced to imprisonment for two concurrent terms of ten years each. On this appeal the Defendant contends that

---

\* Glassman, J., sat at oral argument and participated in conference but died before the opinion was adopted.

1. 17–A M.R.S.A. § 651 provides in part here pertinent:

1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:

. . . . .

B. He threatens to use force against any person present with the intent

(1) to prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or (2) to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;

C. He uses physical force on another with the intent enumerated in paragraph B, subparagraphs (1) or (2) . . .

a delay of approximately 6½ months between arrest and trial deprived him of his constitutional guarantee to a speedy trial.[2] We reject this claim. The Defendant also challenges the sufficiency of the evidence to support the robbery convictions. We conclude after review of the record that the evidence was sufficient to support the conviction for robbery of Samuel White. The evidence, however, was insufficient to support the conviction for robbery of Linwood Verille. Accordingly, we deny the appeal in part and sustain the appeal in part.

The jury would have been justified in finding the following facts: On January 7, 1980, the Defendant and a companion visited the home of 83 year-old Samuel White in Roxbury, and expressed an interest in purchasing a colt owned by White. The three men drove to Livermore where the colt was stabled. Frank Hiscok, the caretaker of White's horses, testified that one of the men accompanying White was tall and thin, and the other one was bearded. He was, however, unable at trial to identify the Defendant as the tall, thin one.

The three men returned to White's residence presumably to discuss purchase of the colt. White was looking out a window with his back to the two men when one of them jumped him and the other took his wallet containing $270.00. White testified that the "tall fellow" grabbed him from behind and the bearded "short fellow" took his money. Because of the lapse of time and his "forgetful" memory, White was unable to identify the Defendant at trial.

The key identifying witness was John Cantwell, who, at the time the Defendant and his companion first arrived at the White residence, was there, working on some frozen pipes. At trial, Cantwell identified one of these visitors as being the Defendant, whom he described as the "tall fellow." The other man he described as being "heavy set" and having a beard. The bearded man told Cantwell that he and the Defendant had come to buy a horse. When White and his two visitors left for Livermore to look at the colt, Cantwell also departed. Cantwell was not present when the three men later returned to the White residence.

Five days, later, on the evening of January 12, 1980, a man wearing a ski mask entered the home of 81-year old Linwood Verille in Bethel and inquired about purchasing a chain saw. Verille testified that the masked man grabbed him, wrestled him face down on the ground, and clipped him on the back of his neck with something cold. He temporarily passed out, and when he came to he saw the man leaving his yard. Both his wallet containing $300.00 and his change pocketbook had been stolen.

Approximately three weeks before this robbery two men had sold a chain saw to Verille. At trial, Verille identified one of these men as the Defendant. He also indicated that the other individual had a red beard.

On the day of the January 12 robbery, George Walters[3] was in the company of the Defendant and one Gerald McKenna. Walters testified at trial that the three of them made two ski masks out of some cloth and proceeded to the home of "Linny" Verille. While Walters waited in his car across the road from Verille's home, the Defendant and McKenna proceeded to enter the house. At that moment, the Defendant Dudley and McKenna were not wearing the ski masks but had them in their possession.

Walters was unable to see what then transpired in Verille's house, but when the Defendant and McKenna returned to the car, McKenna had approximately $300.00 in his possession. The men drove away and

**2.** The Maine Constitution guarantees:

In all criminal prosecutions, the accused shall have a right to ... have a speedy, public and impartial trial, .... Me. Const. Art. I, § 6. The United States Constitution provides in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, .... U.S. Const. Amend. VI. This right is made applicable to the States by the Fourteenth Amendment.

**3.** Walters entered a plea of guilty to this robbery and was convicted on May 30, 1980.

disposed of the wallet at the Woodstock dump where it was discovered shortly thereafter.

On January 24, 1980, the Defendant was arrested and charged with having committed these two robberies. As the result of his inability to secure bail or surety at any time during pre-trial proceedings, the Defendant remained in jail until his trial on August 11, 1980, when he was convicted on both counts of robbery.

## I.

■ The Defendant was arrested and incarcerated on January 24, 1980.[4] Approximately seven weeks later, on March 12, he filed a motion for speedy trial, stating that "the purpose of this motion is to prevent an undue and oppressive incarceration prior to trial, to minimize the concerns of Defendant accompanying a public accusation and to limit the possibility that delay will impair his ability to defend himself at trial." This motion was denied, and jury trial was scheduled, but not reached, on June 4, 1980.

On June 20, 1980, the Defendant filed a motion to dismiss the indictment on grounds that he had been denied a "speedy, public and impartial trial." At hearing on this motion the Defendant claimed that his prolonged incarceration had caused such anxiety as to impair his ability to assist in his defense. The presiding justice denied the motion but ordered the case either tried or dismissed on or before September 1, 1980. Jury trial was held on August 11, 1980. The period of time that elapsed between the Defendant's arrest and trial was approximately 6½ months.

The Defendant now assigns as error the denial of his motion to dismiss for lack of a speedy trial.

We reject this claim.

■ The right to a speedy trial, guaranteed by the Maine and United States Constitutions, is basic to our system of criminal justice. *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967); *State v. Steeves*, Me., 383 A.2d 1379, 1381 (1978). Something more, however, than a mere delay between arrest and trial is necessary before any delay can be considered sufficient to invoke constitutional protection. The delay must have been so unreasonable and unnecessary as to have potentially prejudiced the Defendant. *United States v. Mann*, 291 F.Supp. 268, 270 (S.D.N.Y. 1968); *State v. Steeves, supra* at 1384.

The landmark case of *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), established an *ad hoc* balancing test consisting of four factors to be examined in judging the asserted deprivation of a speedy trial: (a) length of delay, (b) reason for delay, (c) the Defendant's assertion of the right, and (d) prejudice to the Defendant. *See also State v. Lee*, Me., 404 A.2d 983, 986 (1979); *State v. Smith*, Me., 400 A.2d 749, 752 (1979). It is paramount that the functional analysis of these factors be undertaken with regard to the particular circumstances of the individual case. *State v. Catlin*, Me., 392 A.2d 27, 32 (1978). These factors, in and of themselves, have no "talismanic qualities," but rather must be considered together with such other considerations as may be relevant. *Barker, supra*, 407 U.S. at 533, 92 S.Ct. at 2193.

■ The *Barker* analysis, however, need be undertaken only when the length of delay is so presumptively prejudicial as to warrant consideration of the remaining factors. In the case at bar, the Defendant was arrested and incarcerated on January 24, 1980. He remained in jail until the date of trial, August 11, 1980, 6½ months later.

---

4. The right to a speedy trial commences to run from the date of actual restraint imposed by arrest. As stated in *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971): "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *See also State v. Bessey*, Me., 328 A.2d 807, 817 (1974). The length of delay is computed from such point in time until the date of trial. *See United States v. Brown*, 520 F.2d 1106, 1110 (D.C. Cir. 1975).

We are not persuaded that such a delay, given the circumstances of this case, was so "presumptively prejudicial" as to necessitate inquiry into the other factors that comprise the balancing process.[5] We are particularly persuaded by the fact that of the 6½ months the Defendant was incarcerated before trial, 4 of these months were spent serving a sentence for an earlier probation violation. *Cf. State v. Fernald*, Me., 397 A.2d 194 (1979) (five month incarceration, most of which resulted from a parole "hold" placed upon the defendant by correction authorities). We also note that the presiding justice who denied the Defendant's motion to dismiss indictment found justifiable reasons for the delay, including the fact that trial was originally scheduled, but not reached, on June 4, 1980.

On the record before us we conclude that there was no impermissible infringement on the Defendant's constitutional right to a speedy trial.

## II.

As his second point on appeal the Defendant challenges the sufficiency of the evidence to support his convictions of robbery. The Defendant moved for judgments of acquittal at the close of all the evidence and after return of the jury's guilty verdicts; he also moved for a new trial on grounds of insufficient evidence. All motions were denied, and the Defendant now asserts once again that there was insufficient evidence to support findings of guilt beyond a reasonable doubt.

■ We find the evidence sufficient to support the jury's guilty verdict for the robbery of Samuel White. The jury was entitled to believe that on January 7, 1980, the Defendant, acting in concert with an unidentified individual, stole $270.00 from the person of Samuel White, using physical force with the intent to compel White to relinquish control of, and give up, his money. See 17–A M.R.S.A. § 651(1)(C).

We reach a different conclusion, however, with respect to the robbery of Linwood Verille. At trial the evidence showed that on the evening of January 12, 1980, Verille was robbed of $300.00 and small change by a sole assailant wearing a ski mask. As only one person was involved as the perpetrator of this robbery, the key factual issue for the jury's determination was whether or not the Defendant was that person.

George Walters testified that on the evening of January 12, he, Gerald McKenna, and the defendant proceeded to Verille's home. While Walters waited in the car, McKenna and the Defendant crossed the road to Verille's house. At that particular moment, McKenna and the defendant were carrying, but not wearing, two ski masks. From that point on, Walters was unable to see what happened. When McKenna and the Defendant returned to the car, McKenna had a wallet and change purse. He then divided a sum of money between himself and Walters. There was no evidence that the Defendant was ever in possession of the wallet or received any of the money.

The victim, Linwood Verille, testified that he was approached by one man only, who wore a ski mask. He did not know who the man was, and he offered no testimony as to the physical characteristics of his assailant. Verille testified that, acting alone, this masked man grabbed him, wrestled him face down on the ground, clipped him on the back of the neck with "something cold," and stole his wallet and change pocketbook.

We note particularly that there was virtually no evidence adduced at trial to identify the Defendant as the masked man who struck and robbed Linwood Verille. We are, of course, required to consider the evidence in the light most favorable to the State, drawing *reasonable* inferences from that evidence in a manner consistent with the jury verdict. *State v. Goyette*, Me., 407 A.2d 1104, 1109 (1979); *State v. Littlefield*,

---

5. Compare *State v. Lee*, Me., 404 A.2d 983 (1979) (eleven-month delay); and *State v. Catlin*, Me., 392 A.2d 27 (1978) (five and one-half months); with *State v. Smith*, Me., 400 A.2d 749 (1979) (twenty-five months); and *State v. Steeves*, Me., 383 A.2d 1379 (1978) (eight years).

Me., 389 A.2d 16, 19 (1978). To infer, however, from the record now before us, that the Defendant was the sole perpetrator of this robbery would be *unreasonable*, especially in view of our consideration of the evidence in its "totality." *See State v. Matheson*, Me., 363 A.2d 716, 722 (1976). The only *reasonable* inference that can be drawn is that George McKenna and not the Defendant, was the sole perpetrator of the robbery of Linwood Verille. The evidence was not sufficient to support a finding of guilt beyond a reasonable doubt. The Defendant's motion for judgment of acquittal should have been granted in so far as it pertained to the robbery of Linwood Verille.[6]

The entry is:

Appeal denied in part and sustained in part.

Judgment of conviction for robbery of Samuel White affirmed.

Judgment of conviction for robbery of Linwood Verille vacated.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**6.** In reaching this conclusion we wish to emphasize that the Superior Court did not charge the jury on accomplice liability pursuant to 17–A M.R.S.A. § 57. Nor did the State request such a charge. The record reveals that the parties conceded in chambers that the evidence demonstrated either the Defendant was, or was not, the sole perpetrator of the Verille robbery. No evidence of accomplice liability was presented before the jury.