STATE of Maine

v.

Donald BEAUCHENE.

Supreme Judicial Court of Maine.

Argued March 9, 1988.
Decided April 28, 1988.

Lisa Pelky Marchese, Charles K. Leadbetter (orally) Asst. Attys. Gen., Augusta, for state.

Ronald W. Bourget (orally), Bourget & Bourget, Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Defendant Donald Beauchene appeals from a judgment entered on a jury verdict in Superior Court (Kennebec County) convicting him of escape from the Augusta Mental Health Institute (AMHI) under 17–A M.R.S.A. § 755(1) (1983). Beauchene makes four appellate contentions: (1) that the indictment charging escape was insufficient in identifying the nature of the official custody from which he escaped; (2) that a section 755 "escape" does not apply to individuals committed to a state mental health facility following a verdict of not guilty by reason of insanity; (3) that the State failed to comply with the Interstate Compact on Detainers; and (4) that the long period between indictment and trial violated his constitutional right to a speedy trial. We affirm the judgment.

On June 9, 1970, after a jury trial on a murder charge, the Superior Court (Cumberland County) found Donald Beauchene not guilty by reason of mental disease or defect (BRI). Pursuant to 15 M.R.S.A. § 103 the presiding justice committed Beauchene to the custody of the Commissioner of Mental Health and Corrections, who placed him at AMHI. On September 15, 1978, Beauchene left AMHI without permission.[1] On October 4, 1978, a Kennebec County grand jury indicted Beauchene for escape in violation of 17–A M.R.S.A. § 755. At the time of the indictment, Maine officials were not aware of Beauchene's whereabouts. On October 19, 1978, however, New York City police contacted the Maine State Police to inform them that Beauchene had been arrested in New York City on three serious criminal charges. On April 16, 1980, a New York court convicted Beauchene on those charges and sentenced him to concurrent indeterminate sentences the longest of which was 8⅓ to 25 years. By letter dated August 8, 1980, an officer of the Clinton Correctional Facility in Dannemore, New York, informed Maine authorities that Beauchene was incarcerated at that facility and that the State of New York was aware of the escape charge pending against Beauchene in Maine. On or soon after that date Beauchene received a copy of that letter and filed a form indicating his intent to contest extradition to Maine. On October 17, 1986, Maine requested temporary custody of Beauchene pursuant to article IV of the Interstate Compact on Detainers, 34–A M.R.S.A. § 9604 (1988), and Beauchene was returned to Maine from New York on March 18, 1987. Two days later Beauchene pleaded not guilty at his arraignment on the escape charge. On June 1, 1987, the Superior Court denied Beauchene's motion to dismiss based on the ground that the State had violated his right to a speedy trial. On June 11, 1987, Beauchene was tried and convicted of escape. He now appeals from his conviction.

I.

█ Defendant first contends that the October 4, 1978, indictment on the charge of escape under 17–A M.R.S.A. § 755[2] is fatally defective because it incorrectly characterizes the circumstances of the offi-

---

1. Beauchene had previously been convicted for a 1973 escape from AMHI. *See State v. Beauchene,* 382 A.2d 329 (Me.1978).

2. 17–A M.R.S.A. § 755(1) provides that: "A person is guilty of escape if, without official permission, he intentionally leaves official custody, or intentionally fails to return to official custody following temporary leave granted for a specific purpose or a limited period."

cial custody from which he escaped and that therefore the indictment failed to inform him properly of the charge against him. The indictment charged that:

> On or about the fifteenth day of September 1978, at Augusta, in the County of Kennebec and State of Maine, Donald J. Beauchene being a person in official custody at the Augusta Mental Health Institute, at said Augusta, *having been committed on January 24, 1978, to the Augusta Mental Health Institute by Justice Lewis I. Naiman, Kennebec County Superior Court, pursuant to a commitment order dated June 9, 1970, by Judge Sidney Wernick committing the said Donald J. Beauchene to the custody of the Department of Mental Health and Corrections for care and treatment,* did without official permission, intentionally leave the official custody of the Superintendent of the said August[a] Mental Health Institute.

(Emphasis added) Defendant asserts that the emphasized language incorrectly characterized the January 24, 1978, order by Justice Naiman as a commitment order when it was actually no more than an order transferring Beauchene to AMHI from the Kennebec County jail where he had been held pending disposition of an earlier charge of escape from AMHI. Defendant contends that the indictment's linking of his actual 1970 commitment by Justice Wernick to Justice Naiman's transfer order prejudiced his defense by confusing him as to the exact nature of his official custody.

Even if we should accept defendant's contention that the reference to Justice Naiman's order did not accurately reflect the authority for his official custody, de-

fendant would take nothing from this point on appeal. Under 17–A M.R.S.A. § 755, the State must plead and prove that defendant intentionally left official custody without permission. *State v. Hannon,* 395 A.2d 118, 120 (Me.1978), *cert. denied,* 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). The language in the indictment alleging that defendant was "a person in official custody at [AMHI] ... [and] did without official permission, intentionally leave the official custody of the Superintendent of [AMHI]" was not confusing; that language without more adequately informed defendant of the crime charged and fully protected him against any risk of double jeopardy. *See State v. Charette,* 159 Me. 124, 127, 188 A.2d 898, 900 (1963). The indictment's reference to the justices' orders therefore was surplusage, and defendant's argument that he was prejudiced thereby is unconvincing. *See* M.R.Crim.P. 7(d); 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 7.10 (1987).

## II.

◼ Defendant next contends that escape from "official custody" under 17–A M.R.S.A. § 755 does not encompass an unauthorized departure from a mental health facility by a BRI acquittee committed to the custody of the Commissioner of Mental Health pursuant to 15 M.R.S.A. § 103 (1980).[3] Defendant argues that commitment by a section 103 order does not constitute "official custody" within the meaning of that term as used in 17–A M.R.S.A. § 755(3).[4]

We rejected this same contention in relation to the pre-Code escape statute, 17 M.R.S.A. § 1405 (1965) (repealed by P.L.1975,

---

3. 15 M.R.S.A. § 103 has not been amended since 1970 and provides in relevant part:

   When a respondent is acquitted, by reason of mental disease or mental defect excluding responsibility, ... the court shall order such person committed to the custody of the Commissioner of Mental Health and Corrections to be placed in an appropriate institution for the mentally ill or the mentally retarded for care and treatment.

4. In 1978, 17–A M.R.S.A. § 755(3) provided in relevant part:

   As used in this section, "official custody" means arrest, custody in, or on the way to or from *a jail, police station, house of correction,* or any institution or facility under the control of the Bureau of Corrections, or under contract with the bureau for the housing of persons sentenced to imprisonment, the custody of any official of the bureau or *any custody pursuant to court order.*

   (Emphasis added) The amendments of section 755(3) subsequent to 1978 have not changed the definition of "official custody" in any way here pertinent.

ch. 499, § 7). *See State v. Flemming*, 377 A.2d 448 (Me.1977). *See also State v. Beauchene*, 382 A.2d 329 (Me.1978). In determining that now-repealed 17 M.R.S.A. § 1405 applied to escapes by individuals committed pursuant to a section 103 order, we concluded after examining the statutory history of the pre-Code escape statute, that "an escape by an individual confined in a mental health institution as the result of being acquitted of a crime by reason of mental disease or defect is a crime in the State of Maine." *State v. Flemming*, 377 A.2d at 451. A court orders a BRI acquittee committed to AMHI for the protection of both himself and the public. *See State v. Shackford*, 262 A.2d 359, 366 (Me.1970). Within the plain language of the statutory definition of "official custody" in the Criminal Code, AMHI's custody of Beauchene in 1978 was most certainly "custody pursuant to court order." *See* n. 4 above. That custody order resulted from a criminal proceeding and no possible implication arises from the context of the statutory definition of "official custody" that the order of a court committing a person to AMHI as a consequence of the verdict in that criminal proceeding is somehow to be excluded from the application of the criminal escape statute. We do not share with defense counsel any difficulty in distinguishing this custody order from a child custody order entered in a child protection or similar civil proceeding. It makes no sense at all to ascribe to the legislature an intent that the Criminal Code would decriminalize escapes by BRI acquittees from AMHI. *Flemming* and *Beauchene* continue as precedent for rejecting defendant's renewed effort to read the criminal escape statute narrowly.

### III.

Defendant also contends that the State misused the Uniform Interstate Compact on Detainers to bring him to Maine from his incarceration in New York. Defendant argues that the terms of the Compact required Maine actively to seek his custody as soon as Maine became aware of his incarceration in New York.

■ Both New York and Maine have adopted the Uniform Interstate Compact on Detainers. *See* 34–A M.R.S.A. §§ 9601–9636; N.Y.Crim.Pro.L. & R. § 580.20 (McKinney 1971). The Compact is designed to facilitate the trial in one jurisdiction of charges there pending against an individual who is at the time incarcerated in another jurisdiction. 34–A M.R.S.A. § 9601. A careful reading of the Compact does not support defendant's assertion that it places an affirmative duty on a state to seek custody of the prisoner for expeditious transport to the charging state.[5] *See United States v. Dowl*, 394 F.Supp. 1250, 1255 (D.Minn.1975). Article III of the Compact gives the prisoner the right to request final disposition of pending charges and provides for time limits within which the state seeking custody must act *after* the prisoner has requested final disposition. 34–A M.R.S.A. § 9603. Article IV imposes time limits within which the state must act *only after* it has requested custody. *Id.* § 9604. Thus the time limits of the Compact do not come into play until either the charging state has filed a request under the Compact for temporary custody of the prisoner or the prisoner has filed a request for disposition of the pending charge pursuant to the Compact.

■ We also reject defendant's contention that he is beyond the reach of the Interstate Compact on Detainers because he was committed BRI to AMHI pursuant to a section 103 order. Defendant correctly notes that article VI(B) of the Compact states in relevant part that "[n]o provision of this agreement, and no remedy made available by this agreement, shall apply to any person who is adjudged to be mentally ill." 34–A M.R.S.A. § 9606. The purpose of Article VI(B), however, is clearly to prevent one state from gaining custody of an individual in another state who at that time is mentally ill and therefore unable to defend against the custody change effectively. At the time the State of Maine sought custody of defendant in New York, how-

---

**5.** The State's duty to respect defendant's constitutional right to a speedy trial is a distinct

question, which is addressed in Part IV of this opinion.

ever, he had not been adjudged mentally ill by the New York courts but was instead serving time in a New York prison for various crimes he had committed in that state. In any event, any such objection to defendant's transfer by New York should have been raised in the New York courts and is not properly raised here. *See State v. King*, 84 Or.App. 165, 173, 733 P.2d 472, 477–78 (1987).

## IV.

Finally, defendant contends that the eight years and eight months between his indictment and his trial on the escape charge violated his constitutional right to a speedy trial.

■■■ Both the Maine and the United States Constitutions guarantee criminal defendants the right to a speedy trial. U.S. Const. amend. VI (applied to state criminal proceedings through the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)); Me. Const. art. I, § 6. The mere lapse of time, however, does not establish a *per se* violation of that right. The threshold inquiry in evaluating a speedy trial claim is whether the length of time between the indictment and the trial is sufficiently long to raise an inference of prejudice to the defendant, thereby requiring further analysis. *See State v. Willoughby*, 507 A.2d 1060, 1065 (Me.), *cert. denied*, —— U.S. ——, 107 S.Ct. 199, 93 L.Ed.2d 130 (1986). In the case at bar a pretrial delay of 8⅔ years unquestionably raises a presumption of prejudice. *See id.* (delay of 14 months presumptively prejudicial). Having found that the lengthy delay was presumptively prejudicial to Beauchene, we must balance the four factors identified in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether a delay of that length in the particular circumstances presented here is unconstitutionally excessive. *State v. Willoughby*, 507 A.2d at 1064. The *Barker v. Wingo* factors are: "the length of the delay, the reasons for the delay, the defendant's assertion of his right, and the prejudice to the defendant arising out of the delay." *Id.*

"These factors, in and of themselves, have no 'talismanic qualities,' but rather must be considered together with such other considerations as may be relevant." *State v. Dudley*, 433 A.2d 711, 713 (Me.1981) (quoting *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193).

Although the precise reasons for all the pretrial delay do not appear in the record, the State concedes that a major portion of it resulted from the State's negligence in not actively pursuing the return of defendant to Maine. Other portions of the delay, however, cannot be charged to the State and are directly "attributable to either [defendant's] own actions or to circumstances beyond the control of the prosecution." *State v. Lewis*, 373 A.2d 603, 609 (Me.1977).

When the Beauchene indictment came down on October 4, 1978, his whereabouts were unknown to Maine officials. When they did learn of his whereabouts about two weeks later, Beauchene was being held on New York criminal charges, on which he was not tried and sentenced until April 16, 1980. That 1½–year delay was caused by Beauchene's own action in fleeing Maine and committing crimes in New York: the State shares no blame for not bringing Beauchene to trial in that period. *See State v. Goodall*, 407 A.2d 268, 281 (Me. 1979). Once Beauchene was finally sentenced for the New York crimes, he became available to Maine pursuant to the Interstate Compact on Detainer. Nonetheless, the State of Maine did not initiate a request for temporary custody of Beauchene under Article IV of the Compact until October, 1986. Of the intervening period, 13 months during 1985–1986 when Beauchene actively sought to have the New York courts dismiss Maine's detainer warrant, *Beauchene v. Coughlin*, 122 A.D. 2d 303, 504 N.Y.S.2d 273 (1986), cannot be charged against the State. *See State v. Lee*, 404 A.2d 983, 987 (Me.1979). The balance of the delay from 1980 to 1986 seems to be all attributable to the State's negligent inattention to the pending escape indictment against Beauchene. There is, however, no evidence "of any invidious intention [by the state] to deprive ... defend-

ant of his liberty unfairly, [and thus] the delay will weigh less heavily" against the state. *State v. Murphy,* 496 A.2d 623, 628 (Me.1985) (citing *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192). The delay from October 1986 to the trial on June 11, 1987, cannot be charged to the State because Beauchene actively fought his return to Maine until March 1987 and because thereafter the time was required for the court to handle various pretrial motions, including defendant's various motions to dismiss.

In the *Barker v. Wingo* analysis defendant gains no credit at all for any diligence on his part in asserting his speedy trial right. By not later than early August 1980, defendant knew of the escape indictment pending against him in Maine. Defendant immediately filed a notice in New York declaring his intention to contest extradition and subsequently he litigated the validity of Maine's detainer warrant in the New York courts. *See Beauchene v. Coughlin,* 122 A.D.2d 303, 504 N.Y.S.2d 273. After he was returned to Maine involuntarily in March, 1987, defendant never requested a trial on the escape charge, but instead filed a motion to dismiss the indictment on speedy trial grounds several weeks later.

> While it is true that defendant has no obligation to bring himself to trial, his failure to assert his right to a speedy trial at any time prior to his motion to dismiss makes it less credible that the delay was undue or that defendant suffered any prejudice therefrom.

*State v. Murphy,* 496 A.2d at 628. Defendant's considerable efforts to avoid trial and his failure to assert his own available rights under the Interstate Compact on Detainers to get a prompt trial and failure to make known to either the New York or the Maine authorities any desire to have the Maine indictment go to trial militate against any conclusion that a constitutional violation has occurred.

The fourth and final factor to be examined in a plenary speedy trial analysis is prejudice to the defendant. We evaluate prejudice in light of the three interests that the constitutional right to a speedy trial is designed to protect:

> 1) to prevent undue and oppressive incarceration prior to trial; 2) to minimize anxiety and concern to the accused accompanying public accusation; and 3) to limit the possibility the defense will be impaired.

*State v. Willoughby,* 507 A.2d at 1066. No part of the period of defendant's confinement between the Maine indictment and the Maine trial was the fault of the State of Maine. In the context of his numerous criminal convictions, Beauchene's anxiety and concern at being publicly accused of escape from AMHI in 1978 can be given little weight. The record contains no evidence that the pretrial delay resulted in unavailable witnesses, lost exhibits or faded memories. We agree fully with the finding of the presiding justice that defendant was not prejudiced by the pretrial delay, particularly considering the nature of the escape charge.

On balance, even though the delay between indictment and trial was unusually long and was in a significant part the result of the State's inattention to the matter, defendant was not prejudiced by the delay and the extreme remedy of dismissal of the indictment is not constitutionally demanded.

The entry is:

Judgment affirmed.

All concurring.