1998 ME 203

**STATE of Maine**

v.

**Mark HIDER.**

Supreme Judicial Court of Maine.

Argued Feb. 2, 1998.
Decided Aug. 5, 1998.

---

Andrew Ketterer, Attorney General, Donald W. Macomber (orally), James M. Cameron, Asst. Attys. Gen., Augusta, for the State.

Peter W. Evans, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

[¶ 1] Mark Hider appeals from a judgment entered in the Superior Court (Cumberland, *Cole, J.*) following a jury trial in which he was found guilty of trafficking in schedule Z drugs (Class C) in violation of 17–A M.R.S.A § 1103 (Supp.1997).[1] Hider contends that the Superior Court erred in admitting illegally obtained evidence, denied his right to a speedy trial, subjected him to double jeopardy, impermissibly refused to allow him to question prosecution witnesses about his dispute with the Portland Police Department, and admitted unfairly prejudicial evidence. He also alleges the evidence was not sufficient. We affirm the judgment.

[¶ 2] Testimony from Hider's second trial,[2] from which this appeal is taken, provides the following facts. In September 1992, a Portland police officer was tracking a robbery suspect through fields and woods with a trained canine. The dog, trained in narcotics identification, indicated the presence of narcotics in the area. The officer then saw thirty to forty marijuana plants six to ten feet in height, partially surrounded by flower and vegetable gardens. From the garden area he noted two buildings approximately sixty to ninety feet away. He broke off a leaf from one of the plants that was later identified as marijuana. Based on this discovery, a warrant was obtained to search a residential house and karate studio located at 70 Cobb Avenue. While the warrant was being prepared, the officers learned that Hider, who appeared to be the owner of the premises to be searched,[3] was involved in a lawsuit involving a concealed weapons permit and was known to possess a large quantity of weapons.[4]

[¶ 3] A Special Entry (or "SWAT") team made a forcible, unannounced entry into the karate studio, then searched the residence and studio. In the house, officers discovered marijuana in the room of Hider's son who resided in the house with his mother, Hider's former wife. Marijuana pipes, seeds and residue were also discovered elsewhere in the house. Officers dug up and seized the 44 marijuana plants, which when dried totalled 6.5 pounds with a street value of between $1200 to $1700 per pound. Hider's son provided conflicting reports, initially telling police that the plants were his father's. At

---

1. Title 17–A M.R.S.A § 1103 provides in pertinent part:

   1. A person is guilty of unlawful trafficking in scheduled drugs if the person intentionally or knowingly traffics in what the person knows or believes to be a scheduled drug and that is in fact a scheduled drug....

   2. A violation of this section is:

   ...

   B. A Class C crime if the drug ... is marijuana in a quantity of more than 2 pounds or if it is marijuana and the person grows or cultivates 100 or more plants....

   3. A person is presumed to be unlawfully trafficking in scheduled drugs if the person intentionally or knowingly possesses any scheduled drug that is, in fact:

   A. More than 2 pounds of marijuana....

   17–A M.R.S.A. § 1101(17) (Supp.1997) provides in its definition section:

   17. "Traffick:"
   A. To make, create, manufacture;
   B. To grow or cultivate;
   C. To sell, barter, trade, exchange or otherwise furnish for consideration; or

   D. To possess with the intent to do any act mentioned in paragraph C.

2. Hider was re-indicted and a second trial was held after we vacated his first conviction. *See State v. Hider,* 649 A.2d 14 (Me.1994) (*Hider I* ). On his first appeal, we rejected arguments alleging that the search warrant affidavit was illegally obtained, that the evidence was insufficient, and that the forcible, unannounced entry was unreasonable. *See id.* at 15. We vacated the conviction, however, because the court erred in instructing the jury.

3. Hider's former wife in fact owned both the residence and the karate studio building, but Hider operated the karate studio and visited the house and studio several times a week; he was also the sole owner of the personal property in the studio.

4. The warrant listed concealed evidence of drugs, business records related to trafficking drugs, drug paraphernalia, firearms possibly related to drug trafficking, and other identifying evidence.

trial, however, he testified that he planted and raised the marijuana and that his father was not involved. Hider was present during the search of the studio, where officers found a scale of the type typically used to weigh marijuana or cocaine, empty packages of rolling papers, what appeared to police to be a running balance sheet of drug sales, and a silver case containing marijuana residue. Hider was convicted of trafficking in schedule Z drugs.[5]

[¶4] Upon remand of the case after we vacated Hider's first conviction,[6] Hider was re-indicted by the Cumberland County Grand Jury on January 6, 1995, for aggravated trafficking (Class B) in violation of 17–A M.R.S.A § 1105 (1983 & Supp.1997). An additional allegation that Hider possessed firearms at the time of the alleged trafficking made the charge a Class B offense. Pursuant to 17–A M.R.S.A. § 1252(5–A)(A), the new charge carried a minimum two-year sentence of incarceration that could not be suspended.

[¶5] Following an unsuccessful motion by the State to join the new indictment with the original case, and a motion by Hider alleging that the prosecution was vindictive, the State dismissed the prior indictment and moved to amend the new indictment to eliminate any reference to firearms, reverting back to the same Class C felony offense charged in the original 1992 indictment.

[¶6] The court held a hearing on a new motion to suppress all evidence obtained both as a result of the initial entry onto the property and of the search pursuant to the warrant, essentially the same motion as that filed prior to the first trial. Relying on the transcript of the May 6, 1993 hearing on the motion to suppress held prior to the first trial, the court (*Fritzsche, J.*) denied the motion.

[¶7] On March 28, 1996 Hider filed a *pro se* motion alleging deprivation of a right to a speedy trial. The court denied the motion on April 28, 1996, and ordered the case to be set on the next trial list. Following a second motion to dismiss for lack of a speedy trial on August 19, 1996, the trial took place on August 22, 1996. The jury returned a guilty verdict, and Hider was sentenced to a nine-month term of imprisonment with all but 90 days suspended. This appeal followed.

*I.*

*A.*

▮▮ [¶8] Hider challenges the denial of his motion to suppress. As to part of his basis for filing his motion to suppress, he is collaterally estopped. Our decision in *Hider I*,[7] precludes his challenge to the officer's inadvertent entry into the marijuana patch. We have held that "[i]n a separate proceeding between the same parties, collateral estoppel bars relitigation of issues that were actually litigated in the first proceeding." *State v. Moulton,* 481 A.2d 155, 161–62 (Me. 1984) (original order on suppression motion was not invalidated by re-indictment on more serious charges since defendant had "every incentive to litigate" at the first hearing "fully and vigorously") (quoting *Restatement (Second) of Judgments* § 27 (1982)). Defendants have frequently been precluded from re-litigating denials of motions to suppress. *See* Richard B. Kennelly, Jr., *Precluding the Accused: Offensive Collateral Estoppel in Criminal Cases,* 80 Vir.L.Rev. 1379, 1386 (1994) ("[i]nvoking collateral estoppel against the accused is more easily justified regarding suppression motions than regarding a substantive element of the offense."). Whether collateral estoppel would be fair and appropriate has been analyzed, in the context of a suppression hearing, as follows:

*337344 et al.,* No. Cum–95–482 (Nov. 15, 1996) (mem.).

6. *See supra* note 2.

7. *See Hider I,* 649 A.2d at 15 ("[W]e find no wrongdoing on the part of the police officer whose inadvertent discovery was the result of a lawful entry.").

5. After Hider's conviction in the first trial but before sentencing, the State, pursuant to 15 M.R.S.A § 5821(3) (Supp.1997), petitioned the District Court for the civil forfeiture of multiple guns and weapons that police had seized from Hider during the execution of the search warrant. The District Court granted the State's petition and we affirmed the Superior Court's denial of Hider's appeal of the civil forfeiture. *See One .22 Caliber, Davis Derringer Handgun, Serial No.*

First, there obviously must be an identity of issues in the two proceedings. Second, a defendant must have had sufficient incentive to have vigorously and thoroughly litigated the issue in previous proceedings.... Third, the defendant estopped must have been a party to the previous litigation. Fourth, the applicable law must be identical in both proceedings.... Fifth and finally, the first proceeding must result in a final judgment on the merits that provides the defendant not only the opportunity to appeal, but also sufficient incentive.

*Id.* at 1385 (citing *United States v. Levasseur,* 699 F.Supp. 965 (D.Mass.1988), *rev'd on other grounds,* 846 F.2d 786 (1st Cir.1988)).[8] Hider vigorously litigated the identical motion to suppress based on the officer's initial entry onto the land and his discovery of the marijuana patch prior to his first trial. The law relating to such an entry was the same then as it is now, and the case ended in a judgment on the merits that allowed Hider the opportunity and incentive to litigate the issue on appeal. Collateral estoppel precludes relitigation of the same initial entry issue.

### B.

■ [¶ 9] Because the law applicable to the forced entry into Hider's karate studio, however, has changed, Hider is not estopped from challenging that entry anew. In *Hider I* we rejected Hider's challenge to the unannounced entry into his studio, holding that there is no "knock and announce" requirement in Maine and "no prohibition against forcible entry if the circumstances warrant it." *Hider I,* 649 A.2d at 15. Following that decision and prior to the second trial, the United States Supreme Court decided *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The court in *Wilson* held that the common law "knock and announce" principle forms a part of the

Fourth Amendment reasonableness inquiry. *See Wilson,* 514 U.S. 927, 115 S.Ct. at 1916. Because Hider's conviction was vacated, and thus not final, the *Wilson* decision has retroactive effect, and the police conduct must be evaluated pursuant to the new standard. *See Thompson v. State,* 625 A.2d 299, 300 (Me. 1993) (new constitutional rules of criminal procedure will not be applicable to those cases which have become *final* before the new rules are announced); *see also State v. Bouchles,* 457 A.2d 798, 801 (Me.1983) (modifications of search and seizure rules are applied to pending cases).

[¶ 10] In *Wilson,* the Court left to state courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment.[9] *See* 514 U.S. 927, 115 S.Ct. at 1918–19 ("We simply hold that although a search or seizure of a *dwelling* might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry.") (Emphasis added).

■ [¶ 11] Although *at trial* the State elicited convincing evidence of the police officers' awareness that a large quantity of weapons were likely to be found in the search, thus providing a justification for the unannounced entry, *see Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 1421–22, 137 L.Ed.2d 615 (1997) (when no-knock entry is challenged, police must have reasonable suspicion that knocking and announcing presence would be dangerous or futile or inhibit effective investigation of crime), the State's showing *at the suppression hearings* prior to both trials was minimal. At the suppression hearing prior to the first trial, the State provided the trial court with an attested copy of the warrant, the affidavit, and the inventory. The affidavit contained a paragraph stating that firearms were being concealed on the property, but the affiant's basis for that belief was merely that through his experi-

---

8. *See* Kennelly, 80 Vir.L.Rev. 1379.

9. We have subsequently applied *Wilson,* using a reasonableness-in-the-totality-of-the-circumstances standard. *See State v. George,* 1997 ME 2, ¶ 9, 687 A.2d 958, 960 ("Even though there was no specific evidence that defendant had a history of destroying evidence, using firearms, or resorting to violence, the court did not err in finding that it was objectively reasonable for the police to enter unannounced in order to prevent the destruction of the evidence and to ensure their safety and the safety of the public.").

ence and training it was not uncommon for many of those involved in illegal trafficking to possess firearms. At the second suppression hearing prior to the second trial, the State relied entirely on the transcript of the first suppression hearing.

[¶ 12] The court's denial of the motion to suppress was based on a general observation that those who deal in drugs often dispose of them quickly and "are prepared to use the guns against the police if the police were to announce their presence first." The court concluded that when the warrant permits police to look for drugs and weapons, "they may have to be given greater freedom and discretion." Additional evidence of the basis for the officers' unannounced entry into the karate studio was not produced by the State until the *trial*, when officers testified that they learned before the execution of the search warrant that Hider was known to have a "large amount of weapons."

[¶ 13] Although the State may not have justified the unannounced entry with the evidence it presented at the suppression hearing, nevertheless, we are convinced that the motion to suppress was properly denied. First, the entry was made not into a residence, but into Hider's karate studio. *See United States v. Francis*, 646 F.2d 251, 258 (6th Cir.1981) (Of three interests served by the rule against unannounced entry—preventing violence, preventing the destruction of property, and protecting privacy—courts have shown the most concern for protecting individual privacy. Much less of a privacy interest in business premises than exists in a private home.) (citations omitted); *see also U.S. v. Conley*, 92 F.3d 157, 170–71 (3d Cir. 1996) (noting distinction between entry into a residential and a commercial building); *State v. Boilard*, 488 A.2d 1380, 1383–85 (Me.1985). Second, at the time they entered Hider's studio, the officers were in fact very aware that Hider was known to possess firearms.

[¶ 14] Because the officers were indeed well aware of Hider's possession of numerous firearms at the time of the unannounced entry, and the entry was made into Hider's place of business, his studio, and not into a residence, we will not disturb the trial court's denial of the motion to suppress.

## II.

[¶ 15] Hider also contends that because his second trial was held nineteen-and-a-half months following his re-indictment and twenty-two months after his first conviction was vacated, he was denied a speedy trial as guaranteed by the federal and state constitutions.[10]

[¶ 16] A person accused of a crime is entitled to a discharge or dismissal if his right to a speedy trial is violated. *State v. Couture*, 156 Me. 231, 244, 163 A.2d 646, 655 (1960). *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), sets forth the factors to be considered in alleged speedy trial violations. These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the resulting prejudice to the defendant. *See State v. Connors*, 679 A.2d 1072, 1075 (Me.1996).

[¶ 17] First, the twenty-two month delay in Hider's case does not establish a *per se* violation of his right to a speedy trial, but it is enough to raise a presumption that such delay was not necessary.[11] *See State v. Rippy*, 626 A.2d 334, 339 (Me.1993) (nineteen-month delay was enough to raise presumption that such delay was unnecessary); *State v. Michaud*, 590 A.2d 538, 540 (Me.1991) (thirty-two month delay not *per se* violation).

[¶ 18] Second, we have been reluctant to find violations of the right to a speedy trial unless the delay is *solely* attributable to the State's conduct, or the State acts in bad faith. *See State v. Willoughby*, 507 A.2d 1060, 1066 (Me.1986) (time consumed by

---

10. *See* U.S. Const. amend V; Me. Const. art. I, § 6–A. *See also State v. Brann*, 292 A.2d 173, 176 (Me.1972) ("We, therefore, treat the claim of the right to speedy trial under the Maine Constitution as including, automatically and at minimum, those benefits provided by the Federal Sixth Amendment guarantee of speedy trial.").

11. Hider conceded that analysis of the delay issue begins not at the arrest in 1992, but on October 27, 1994 when the first conviction was vacated.

prosecution's interlocutory appeal was not chargeable against the State even though the outcome was unfavorable to the State); *State v. Lewis*, 373 A.2d 603, 609 (Me.1977) (no violation when substantial part of the six-month delay was "attributable to either the appellant's own actions or to circumstances beyond the control of the prosecution"). In this case both the State and Hider contributed to the delay.[12] *See Rippy*, 626 A.2d at 334 (nineteen-month post-indictment delay did not violate defendant's constitutional right to speedy trial where it could be attributed to fault of both parties).

[¶ 19] Third, Hider was late in asserting his right to a speedy trial, bringing his motions less than five months prior to trial, and again just before his trial commenced. *See State v. Carisio*, 552 A.2d 23, 26 (Me.1988) (defendant "did not assert her right to a speedy trial ... until five months before the trial, making less credible her claim that any delay was undue or any prejudice substantial.").

[¶ 20] Fourth, we evaluate Hider's claim of prejudice "in light of the three interests that the constitutional right to a speedy trial is designed to protect: 1) to prevent undue and oppressive incarceration prior to trial; 2) to minimize anxiety and concern to the accused accompanying public accusation; and 3) to limit the possibility the defense will be impaired." *State v. Beauchene*, 541 A.2d 914, 919 (Me.1988) (citations omitted). The most important of those interests is the last. *See State v. Steeves*, 383 A.2d 1379, 1384 (Me.1978). Hider has been subjected to no incarceration, having been free on bail during the entire period of time, and he has presented no specific evidence as to his anxiety and concern over the public accusation. *Beauchene*, 541 A.2d at 919.

[¶ 21] Nor has Hider pointed to any evidence to demonstrate that the dimming of witnesses' memories impaired his defense. Hider called no witnesses at either of his trials, and any impairment to his defense appears to be theoretical only. *See State v. Joubert*, 603 A.2d 861, 865 (Me.1992) (alleged lost testimony speculative in nature); *State v. Cadman*, 476 A.2d 1148, 1152 (Me.1984) (fact that defendant could point to no witnesses that had disappeared or any evidence that was lost weighed heavily against him).[13] Hider was not denied his right to a speedy trial.

### III.

[¶ 22] Hider argues that he was twice punished: first by forfeiture of his weapons, and then by a criminal trial arising out of the same conduct. The double jeopardy clauses of the state and federal constitutions prohibit multiple punishments for the same offense. *See State v. Millett*, 669 A.2d 754, 755 (Me.1996). The protection under each are coextensive. *See State v. Wilson*, 671 A.2d 958, 960 (Me.1996). Whether a criminal prosecution violates double jeopardy is a question of law. *See State v. O'Connor*, 681 A.2d 475, 476 (Me.1996). We have already addressed and ejected the identical double jeopardy argument, based on the identical statute. In *State v. George*, 1997 ME 2, ¶ 6, 687 A.2d 958, 959, we concluded, consistent with the opinion of the United States Supreme Court in *U.S. v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), "that a civil forfeiture proceeding is remedial, not punitive and, therefore, jeopardy does not attach during such a [civil] proceeding." *George*, 1997 ME 2 at ¶ 6, 687 A.2d at 959, (quoting *United States v. Ursery*). Hider's double jeopardy contention is without merit.

### IV.

[¶ 23] Hider next contends that the court erroneously refused to allow him to

---

12. Much of the delay was caused by Hider's motion for grand jury transcripts. The State, on the other hand, is responsible for some delay caused by its decision to reindict Hider for the more serious class B trafficking offense.

13. Hider also argues that he was prejudiced by the fact that some of the testimony of the State's witnesses changed, or was inconsistent with pri-

or testimony. His argument is without merit. The right to a speedy trial does not protect the defendant from new evidence. *See State v. Fernald*, 397 A.2d 194, 197 (Me.1979) (prejudice through creation of new evidence against defendant during the passage of time "is not within the scope of the constitutional guarantee of speedy trial").

question State witnesses about his then pending legal dispute with the Portland Police Department[14] that would have established the State's bias and motive for charging only him, when others were more closely connected to the property and the marijuana. We disagree.

[¶ 24] Although a defendant's constitutional right to confront and cross-examine the witness against him significantly circumscribes the court's discretion to exclude evidence, *see State v. Cloutier*, 1997 ME 96, ¶ 5, 695 A.2d 550, 552, that constitutional right to confront and impeach the witnesses does not guarantee unrestricted admission of all evidence of an impeaching nature. *See State v. Larrabee*, 377 A.2d 463, 467 (Me. 1977). In this case, Hider does not contend that *testimony* of the Portland police officers was affected by bias. Rather he points to the decision to *charge* him with criminal conduct, a decision that rests with the District Attorney, and not with the Portland Police Department. The exclusion of evidence of Hider's dispute with the Portland Police Department was within the Court's discretion. M.R.Evid. 403 (evidence may be excluded if probative value is substantially outweighed by the danger of confusion of the issues, undue delay, or waste of time).

### V.

[¶ 25] Finally, Hider contends that the court erred by admitting the evidence seized in the karate studio, that included a scale of the type typically used to weigh marijuana or cocaine, empty packages of rolling papers, what appeared to police to be a running balance sheet of drug sales, and a silver case containing marijuana residue, and that the evidence was insufficient to support his conviction. Both contentions are without merit.

The entry is:

Judgment affirmed.

---

14. Hider was apparently in litigation with the City of Portland and the Portland Police Department.