**STATE of Maine**

**v.**

**Harold GLIDDEN.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1984.

Decided Feb. 11, 1985.

Margaret J. Kravchuk, Dist. Atty., Gary F. Thorne (orally), R. Christopher Almy, Asst. Dist. Attys., Bangor, for plaintiff.

Julio DeSanctis (orally), Bangor, for defendant.

Before McKUSICK, C.J., NICHOLS, VIOLETTE and GLASSMAN, JJ., and WERNICK, A.R.J.

WERNICK, Active Retired Justice.

In June, 1983 the grand jury convened in Penobscot County indicted the defendant Harold Glidden charging in four Counts that in April, 1983 he had committed the crimes of Burglary and Theft,[1] respectively, in the homes in Corinna of Sue Wolfe (Counts I & III) and of Gerald S. Wark (Counts II & IV). In March, 1984 a jury found the defendant guilty as charged in Counts I, II and III and of simple theft under Count IV. The defendant's appeal to this Court raises the single issue whether there was prejudicial error in the presiding justice's instructions to the jury regarding the defense of duress. We deny the appeal and affirm the judgments of conviction.

The prosecution's theory of the defendant's guilt was that he had been an accomplice of one Joseph Albert. A connection between the defendant and Albert appeared with particular cogency in the evidence relating to Count III of the indictment, which showed that at Albert's request, the defendant had tried to sell a unique diamond ring stolen in the April, 1983 burglary of Sue Wolfe's home. Such evidence could establish "theft" under 17–A M.R.S.A. § 353 (1983) in that it could support a conclusion that the defendant had "exercised unauthorized control over the property of another with intent to deprive him thereof."

In light of testimony by the defendant that Albert, who the defendant knew had no qualms about killing, had impliedly threatened the defendant with serious bodily injury, or even death, in regard to a prior incident, the presiding justice instructed the jury that as to the Count III charge of theft, it was entitled to consider whether the defendant had acted under duress imposed by Albert.[2] The justice, however, refused to instruct the jury that it could consider duress in relation to the charges of burglary at the Wolfe and Wark homes (Counts I & II) and of theft of Wark's property (Count IV).

The justice made this differentiation because the defendant did not deny attempting to sell the diamond ring but did categorically deny participation in the burglaries and in the theft of property belonging to Wark. The justice's instructions to the jury reflected the view that the law does not permit a defendant who categorically denies participating in the commission of a crime to assert that in committing it, he acted under duress. The defendant contends the presiding justice misconceived the law and, in consequence, gave prejudicially erroneous instructions.

We conclude that we need not address the issue thus raised, and we intimate no opinion on it. We decide the case on anoth-

---

1. 17–A M.R.S.A. §§ 401 and 353 (1983).

2. The prosecution did not object to the giving of a duress instruction as to Count III.

er ground, that the evidence failed to generate the defense of duress as to any Count of the indictment. The presiding justice therefore acted without error in refusing to instruct on duress regarding Counts I, II and IV. By allowing factfinder consideration of duress as to Count III, the justice's instruction gave the defendant more than was his legal entitlement and in all the circumstances worked to his advantage, not his detriment; thus the defendant has no legitimate complaint of prejudice. *State v. Flash*, 418 A.2d 158, 163 (Me.1980).

■ Duress is a defense, not an affirmative defense. Hence, the defendant has no ultimate burden of proof as to it and can require the prosecution to negate applicability of the defense by showing beyond a reasonable doubt the absence of at least one of its essential elements. 17–A M.R.S.A. § 101(1) & (2) (1983). The prosecution is made to bear this ultimate burden if, and when, the defendant can point to the existence of "evidence … [whether produced by the prosecution or the defendant] sufficient to raise a reasonable doubt on the issue…." 17–A M.R.S.A. § 101(1) (1983). In more directly stated affirmative terms, the statutory phrase "evidence … sufficient to raise a reasonable doubt on the issue" means evidence sufficient to make the existence of all the facts constituting the defense a reasonable hypothesis for the factfinder to entertain. Court decisions sometimes refer to the initial responsibility thus reposing on the defendant as the defendant's burden to "generate" a claimed defense. *See, e.g., State v. Kee*, 398 A.2d 384, 386 (Me.1979).

In the present case the defendant contends that taken most favorably to him, the following evidence was sufficient to generate the defense of duress.[3] At the time the crimes charged against the defendant were committed, during April, 1983, the defendant was staying at the home of Joseph Albert. The defendant was in mortal fear of Albert, for two reasons. First, he had been told, and believed, that some years previously Albert had killed two individuals. Second, a few weeks prior to April, 1983, the defendant had been present when Albert raped and killed a young woman. After that occurrence, Albert had made statements to the defendant implying to him that what had happened "bound" the defendant to Albert; the defendant would suffer serious injury, if not death, should he ever "rat" on Albert about the incident. The defendant's great fear of Albert led him to do whatever Albert might want of him, lest his refusal to do Albert's bidding would make Albert suspicious that the defendant's allegiance might be weakening.

■ We decide that the foregoing circumstances fail to generate duress as a defense to the specific criminal acts the jury found that the defendant had committed.

The defendant's contention is that the specific threat by Albert, coupled with the defendant's awareness that Albert had no qualms about killing, caused the defendant to be *subjectively* apprehensive in two respects. First, the defendant attributed to Albert's prior threat an impact extending much beyond the time when the threat was made and the specific conduct it addressed. Second, in the defendant's mind the force of this carry-over pressure was so strong that, in effect, it made the defendant Albert's slave to do whatever might be Albert's bidding in the reasonably foreseeable future.

The fatal flaw in the defendant's position is that it would make legally controlling the defendant's subjective reaction to Albert's

---

**3.** In 17–A M.R.S.A. § 103–A (1983) the defense of duress, as having bearing here, is stated to be:

1. It is a defense that, when a defendant engages in conduct which would otherwise constitute a crime, he is compelled to do so by threat of imminent death or serious bodily injury to himself or another person or because he was compelled to do so by force.

2. For purposes of this section, compulsion exists only if the force, threat or circumstances are such as would have prevented a reasonable person in the defendant's situation from resisting the pressure.

prior specific threat. 17–A M.R.S.A. § 103–A(1) & (2) (1983) sets out objective factors as essential elements of duress. As applicable here, these factors mandate two inquiries. The first, arising from the statutory requirement of a "threat" (or "force") operating as to the *specific* conduct charged as criminal, is whether a *reasonable* person in the defendant's situation would have interpreted Albert's earlier specific threat to have the generalized carry-over menacing impact that the defendant's subjective reaction gave to it. The second inquiry is whether, even if there was such an objective carry-over menace of evil, the menace would have been of such potency to a *reasonable* person in the circumstances as to have "prevented ... him ... from resisting ... [its] pressure."

■ It would stretch the statutory mandates of objective reasonableness beyond rational limits were we to deem them generated by the evidence in this case. As the decisions in other jurisdictions with which we agree show, the defendant's contention must fail because there is a lack of directness and proximateness in the connections he seeks to establish. *See, e.g., Roleson v. State*, 272 Ark. 346, 349–350, 614 S.W.2d 656, 658 (1981); *Chambers v. State*, 154 Ga.App. 620, 624, 269 S.E.2d 42, 46–47 (1980); *State v. Horn*, 58 Haw. 252, 566 P.2d 1378 (1977); *People v. Coogler*, 35 Ill.App.3d 176, 178, 340 N.E.2d 623, 624 (1975); *Delaney v. Commonwealth*, 520 S.W.2d 747, 748 (Ky.1975). It would simply go too far to permit as reasonable the hypotheses (1) that Albert's earlier threat which related only to the defendant's remaining silent about a particular past incident would have led a *reasonable* person, even if aware of Albert's ready willingness to kill, to feel heavily pressured several weeks later by Albert's request that the defendant perform an entirely different criminal act; or (2) that were a reasonable person to experience such pressure to some degree, it would be so powerful as to have prevented such reasonable person from resisting it.

■ Indeed, the cases show further that the defendant's subjective apprehension cannot satisfy the objective criteria for duress for the simple reason that after Albert had made his request, the defendant had ample opportunity to avoid doing what Albert had asked; as a *reasonable* person, the defendant could have gone to the police or taken other steps to be protected. *See, e.g., Commonwealth v. Robinson*, 382 Mass. 189, 199, 415 N.E.2d 805, 812 (1981); *State v. Green*, 470 S.W.2d 565, 568 (Mo. 1971) *cert. denied sub nom. Green v. Missouri*, 405 U.S. 1073, 92 S.Ct. 1491, 31 L.Ed.2d 806 (1972); *State v. Hicks*, 591 S.W.2d 184, 192 (Mo.App.1979); *Mallicoat v. State*, 539 S.W.2d 54, 56–57 (Tenn.Crim. App.1976).

The evidence thus failed to generate the defense of duress for factfinder consideration. The justice's refusal to instruct on duress in relation to Counts I, II and IV of the indictment was not error, and the giving of a duress instruction as to Count III did not prejudice the defendant.

The entry is:

Judgments *Affirmed*.

All concurring.