2006 ME 75

**STATE of Maine**

v.

**Donald PIERCE.**

Supreme Judicial Court of Maine.

Argued: April 11, 2006.
Decided: June 19, 2006.

Geoffrey A. Rushlau, District Attorney (orally), Rockland, for State.

Christopher K. MacLean, Esq. (orally), Elliott & MacLean, LLP, Camden, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] Donald Pierce appeals from a judgment of conviction entered in the Superior Court (Knox County, *Studstrup, J.*) following a jury trial. He was convicted of unlawful trafficking in scheduled drugs (Class B), 17–A M.R.S.A. § 1103(1), (2)(A) (Supp.2001); conspiracy to traffick in scheduled drugs (Class C), 17–A M.R.S.A. §§ 151(1), 1103 (1983 & Supp.2001); and marijuana cultivation (Class D), 17–A M.R.S.A. § 1117(1), (2)(C) (Supp.2001). He also appeals a criminal forfeiture, pursuant to 15 M.R.S. § 5826 (2005), in the amount of $145,000. Pierce contends that because there was insufficient evidence that he trafficked in twenty or more pounds of marijuana, the evidence was insufficient for the jury to convict him of Class B trafficking in scheduled drugs and Class C conspiracy to traffick in scheduled drugs. He also contends that the evidence was insufficient to establish that the $145,000 cash found in his safe deposit box was subject to forfeiture. We affirm the judgment.

I. BACKGROUND

[¶ 2] The jury could have reasonably found the following facts. In 2001, Pierce and two associates grew marijuana in several patches in Warren and Cushing. Pierce had separate growing operations with the two associates. Pierce and one of the associates grew marijuana in Warren on North Pond Road and on Black Swan Lane. Pierce and the other associate grew marijuana in Cushing on Broad Cove Lane and on Pleasant Point Road.

[¶ 3] Pierce sold the marijuana after his associates helped him harvest and process it. Pierce sold all but five pounds of one associate's share of the marijuana and gave him $5000, but never paid the other associate the $5000 he promised him. One of the buyers paid Pierce $2800 per pound. Pierce stored some of the marijuana at his son's home, and Pierce never kept more than one pound at his own home.

[¶ 4] In August 2001, a man showed detectives from the Knox County Sheriff's Department several marijuana grow sites. The detectives returned to the grow sites and set up video surveillance equipment. They found twenty-seven marijuana plants at patches on Black Swan Lane and eighteen marijuana plants at the patch on the west side of North Pond Road. When the detectives returned to these patches to retrieve the surveillance equipment, they discovered that the tops had been cut off the plants. Some of the plants had been twelve feet tall and were cut down to five feet in height. One of the associates testified that in cultivating marijuana, he and Pierce would first cut off the tops of the larger plants. During the time this material was drying, the plants would continue to grow, and they would later harvest the additional growth.

[¶ 5] The detectives pulled the roots and stalks of the marijuana plants out of the ground from the patches on Black Swan Lane and the west side of North Pond Road. Then they removed the leafy material from the stalks and dried the leafy material before sending it to the Maine Health and Environmental Testing Laboratory to be analyzed and weighed. The dried marijuana recovered from these two patches weighed 426.4 grams and 1245.3 grams, respectively. As there are 454 grams in one pound, the weight in pounds

of marijuana from these two locations was 3.68 pounds.

[¶ 6] In September 2001, one of Pierce's associates voluntarily met with detectives and agreed to cooperate with the investigation of Pierce. The associate disclosed the location of a grow site on the east side of North Pond Road. Detectives harvested the marijuana plants they found there, again removing the leaves from the stalks and sending the dried leaves to be analyzed. They recovered 3.6 pounds of marijuana from this location.

[¶ 7] Law enforcement agencies executed warrants to search the residences of Pierce and the two associates. At Pierce's apartment, they found 453.5 grams (close to one pound) of marijuana in the freezer, a digital scale, a tri-beam scale, and $1180 in twenty-dollar bills. At one associate's home they found marijuana weighing 3297.5 grams, or 7.26 pounds. The second associate began cooperating with the authorities after marijuana and paraphernalia were found at his residence.

[¶ 8] Law enforcement agencies obtained a warrant to seize Pierce's safe deposit boxes, and they subpoenaed information regarding Pierce's checking and savings accounts. The law enforcement officials drilled open a safe deposit box rented by Pierce at a bank in Waldoboro. They had initially asked Pierce for the key, but he denied that the box belonged to him. The safe deposit box contained 105 envelopes with either $1000 or $5000 cash in each envelope, for a total of $145,000. Inside Pierce's safe deposit box at another bank, the authorities found certificates of deposit.

[¶ 9] The law enforcement agencies also executed a search warrant at the home of Pierce's son the day after the son had attempted unsuccessfully to gain access to his father's safe deposit box. The authorities found a total of 9.5 pounds of marijuana on the son's property.

[¶ 10] After receiving information from one of Pierce's associates about the grow sites in Cushing, two detectives went to Broad Cove Lane, where they found two separate patches containing thirty-one marijuana plants with their tops removed. A short distance away on Pleasant Point Road, near Broad Cove Church, they found twenty-one plants with their tops cut off. The detectives processed these plants as they had before, by stripping the leaves from the stalks and drying them. They recovered 2.48 pounds from the patches on Broad Cove Lane and 2.2 pounds from the patch on Pleasant Point Road.

[¶ 11] Pierce was arrested on October 4, 2001, and indicted on July 29, 2002. When jury selection could not be completed, Pierce's trial was continued. A new indictment was issued on June 9, 2004, charging Pierce with Class B trafficking and Class C conspiracy to traffick, the offenses of which he was ultimately convicted. The new indictment also charged Pierce with Class C marijuana cultivation, alleging that he cultivated 100 or more plants. The indictment also sought forfeiture of the $145,000 found in Pierce's safe deposit box and the $1180 recovered in his apartment.

[¶ 12] Pierce's trial was held over four days in April 2005. Both of the associates testified against Pierce. Pierce's son invoked his Fifth Amendment rights and gave only limited testimony against his father. The State also presented testimony about Pierce's financial situation.

[¶ 13] After the State rested, the court granted Pierce's motion for acquittal with respect to the marijuana cultivation count as a Class C offense because the State proved only that there were ninety-seven plants. The court did not dismiss the count as to the lesser included offenses.[1]

---

1. The court denied Pierce's motions for acquittal on the trafficking and conspiracy counts in which he argued that the State did

[¶ 14] The jury found Pierce guilty of Class B trafficking in marijuana,[2] Class C conspiracy to traffick in marijuana, and Class D marijuana cultivation. The jury found that the $145,000 in cash from the safe deposit box was forfeited to the State. The court sentenced Pierce to six years incarceration on the Class B offense, with all but twelve months suspended and probation for two years. Concurrent sentences of less than one year were imposed on the other two offenses. Execution was stayed pending appeal.

## II. DISCUSSION

A. Sufficiency of the Evidence for the Trafficking and Conspiracy to Traffick Counts

[¶ 15] Pierce contends that the evidence was insufficient for the jury to convict him of Class B trafficking and Class C conspiracy to traffick because the evidence was insufficient to conclude that he possessed twenty or more pounds of marijuana with the intent to sell it. The indictment charged that Pierce "did intentionally or knowingly traffick in an aggregate quantity of 20 or more pounds of what he knew or believed to be a scheduled drug, which was in fact marijuana, a schedule Z drug." Title 17–A

M.R.S.A. § 1103(1) provides that "[a] person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly trafficks in what the person knows or believes to be a scheduled drug and that is in fact a scheduled drug." If the drug is "marijuana in a quantity of 20 pounds or more," trafficking is a Class B crime. 17–A M.R.S.A. § 1103(2)(A).

[¶ 16] When we review a challenge to the sufficiency of the evidence in a criminal case, "we view the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Bouchard*, 2005 ME 106, ¶ 10, 881 A.2d 1130, 1134 (quotation marks omitted).

[¶ 17] Pierce concedes that the evidence was sufficient to prove that he possessed, with the intent to sell, the 17.75 pounds of marijuana found at his home, his son's home, and the home of one of the associates. He acknowledges that the evidence was sufficient to prove Class C trafficking and Class D conspiracy to traffick.[3] However, he contends that the evidence was not sufficient to prove that he possessed with the intent to sell the 11.96 pounds of plant material that was removed from the marijuana stalks and dried by the law enforcement officials.[4]

not prove that he possessed twenty or more pounds of marijuana with the intent to sell because there was no evidence that the 9.5 pounds of marijuana found at the son's home was in Pierce's possession. The court also denied Pierce's motion for judgment as a matter of law on the forfeiture count.

2. The judgment and commitment form incorrectly states that Pierce was convicted of Class C trafficking.

3. The possession of more than one pound, but less than twenty pounds, of marijuana with the intent to sell it constitutes Class C unlawful trafficking. 17–A M.R.S.A. § 1103(2)(A), (B) (Supp.2001). Conspiracy to commit a Class C crime is a Class D crime. 17–A M.R.S.A. § 151(9) (1983).

4. Pierce refers to this material as marijuana "shake." "Shake" has been defined as "the small bits of marijuana, usually leaves, that break off and accumulate at the bottom of a plastic bag containing marijuana when the bag is handled roughly," *United States v. Krueger*, 415 F.3d 766, 769 (7th Cir.2005); and as "marijuana seeds plus broken stems and leaves," *United States v. Baker*, 905 F.2d 1100, 1105 (7th Cir.1990). The facts here indicate that the material seized by the law enforcement officials from the several grow sites was considerably more than small bits of leaves, seeds, broken stems, or broken leaves.

[¶ 18] The Criminal Code defines marijuana as including "the leaves, stems, flowers and seeds of all species of the plant genus cannabis," but it does not include "the mature stalks." 17–A M.R.S. § 1101(1) (2005). For this reason, the law enforcement officials removed the leaves from the stalks before drying them. The material sent to the state laboratory to be analyzed and weighed did not include the stalks.

[¶ 19] Pierce contends that the only reasonable inference from the evidence was that he had abandoned the plant material harvested by the law enforcement officials and that he had no intention of selling it or using it for any purpose. However, Pierce ignores the testimony of his associate that he and Pierce cut off the tops of the plants, and that they intended to go back and harvest more plant material after the rest of the plant grew larger. One of the deputies testified that although the tops of the marijuana plants had been removed, the plants were alive. A reasonable inference that the fact-finder could draw from the testimony was that Pierce had only partially harvested the plants at the time the tops were cut off and that he intended to go back at a later time, after there was more growth, and harvest the plants again for the purpose of having more to sell. The jury rationally could have found beyond a reasonable doubt that Pierce possessed twenty or more pounds of marijuana with the intent to sell it.

B. Sufficiency of the Evidence for the Forfeiture Count

[¶ 20] Pierce contends that the evidence was not sufficient to prove that the $145,000 found in his safe deposit box was traceable to the criminal activity for which he was convicted. Because the cash was seized within a short time after he harvested the marijuana, Pierce contends that the reasonable inference is that he had not yet realized income from the harvest. Pierce further contends that the $145,000 could not have been the proceeds of drug trafficking that occurred during the dates alleged in the indictment because there was evidence that he only visited the safe deposit box once during that period and the box was lighter when he left.

[¶ 21] When we review a challenge to the sufficiency of the evidence for a criminal forfeiture, we view the evidence in the light most favorable to the State to determine whether there is competent evidence in the record to support a finding that the property is subject to forfeiture. *See City of Bangor v. Diva's, Inc.*, 2003 ME 51, ¶ 7, 830 A.2d 898, 901; *see also United States v. Juluke*, 426 F.3d 323, 326–28 (5th Cir.2005) (reviewing factual findings in a criminal forfeiture case for clear error). "We review questions of statutory interpretation de novo." *Shaw v. Packard*, 2005 ME 122, ¶ 8, 886 A.2d 1287, 1289. When we interpret a statute, "we look first to the plain meaning of the statutory language to give effect to legislative intent." *State v. One Blue Corvette*, 1999 ME 98, ¶ 7, 732 A.2d 856, 857 (quoting *Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 676 (Me.1996)).

[¶ 22] The State and Pierce disagree on the interpretation of the forfeiture statutes. The criminal forfeiture statute states that "a person convicted of a violation of Title 17–A, chapter 45 forfeits to the State all rights ... to property that is subject to forfeiture pursuant to section 5821." 15 M.R.S. § 5826(1). Section 5821, in turn, provides that property subject to forfeiture includes "all money ... or other things of value furnished or intended to be furnished by any person in exchange for a scheduled drug in violation of Title 17–A, chapter 45; [and] all proceeds traceable to such an exchange." 15 M.R.S.A. § 5821(6) (Supp.2001). Pierce interprets the statute to mean that the $145,000 is subject to

forfeiture only if it is traceable to the trafficking crime for which he was convicted. The State, on the other hand, contends that it is sufficient for the State to prove by a preponderance of the evidence that the $145,000 is the result of illegal drug trafficking.

[¶ 23] The plain language of the forfeiture statutes requires the State to prove by a preponderance of the evidence that the defendant has been convicted of a violation of chapter 45 of title 17–A, and that the money or other thing of value was furnished or intended to be furnished in exchange for a scheduled drug, or is traceable to such an exchange. The plain language does not limit the subject of forfeiture to money that is traceable to the particular drug transaction that led to the conviction or, as in this case, to the twenty or more pounds of marijuana possessed by Pierce that led to his conviction.

[¶ 24] Utilizing the plain language of the statute, there was competent evidence in the record to support a finding that the cash in the safe deposit box was subject to forfeiture. Pierce concedes that there was sufficient evidence to convict him of trafficking for possessing less than twenty pounds of marijuana with the intent to sell. There was evidence from which the jury could have found that Pierce harvested and sold a substantial amount of marijuana. The jury heard that the tops of the plants had been harvested, and that as much as seven feet had been cut from some plants. There was other evidence from which the jury could find that the cash was the result of illegal activity. Pierce denied to law enforcement officials that the safe deposit box was his. When he learned he was under investigation he asked his son to access the box. His only source of legal income was disability benefits from Social Security, and there was evidence that he converted the portion of his monthly disability benefits that was not

used for living expenses into certificates of deposit after accumulating certain amounts in his savings account. He had another safe deposit box, in which he kept the certificates of deposit. The evidence was sufficient to support a criminal forfeiture of the $145,000.

The entry is:

Judgment affirmed. Case remanded for correction of judgment on the Class B trafficking conviction.