2009 ME 78

**STATE of Maine**

v.

**Donald K. CHRISTEN.**

Supreme Judicial Court of Maine.

Argued: June 17, 2009.

Decided: July 28, 2009.

---

**8.** We are not persuaded by and do not separately address Knowlton's remaining arguments.

Peter B. Bickerman, Esq. (orally), Verrill Dana LLP, Augusta, ME, for Donald K. Christen.

Evert N. Fowle, District Attorney, James G. Mitchell, Asst. Dist. Atty. (orally), Somerset County Courthouse, Skowhegan, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, LEVY, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1] Donald K. Christen appeals from a judgment of conviction entered in the Superior Court (Somerset County, *Studstrup, J.*) upon a jury verdict finding him guilty of aggravated marijuana cultivation (Class C), 17–A M.R.S. § 1105–D(1)(A)(3) (2008). Because there were no obvious errors in the court's jury instructions and Christen's right to receive a

speedy trial was not violated, we affirm the conviction.

## I. BACKGROUND

[¶ 2] On November 10, 2004, the Somerset County Sheriff's Department executed a search warrant at Christen's house in Madison and confiscated harvested marijuana and thirteen marijuana plants, amounting to a total of approximately one pound, six ounces of marijuana. Christen told the deputies that he possessed and was growing the marijuana legally as a designated caregiver for several people who qualified as eligible patients pursuant to Maine's medical marijuana statute.[1]

[¶ 3] Christen was indicted on two counts of aggravated trafficking in scheduled drugs and one count of aggravated marijuana cultivation.[2] Before the trial, Christen filed several motions, including a

---

1. Maine's medical marijuana statute states, in relevant part:

   **5. Medical use of marijuana; exemptions.** The following provisions govern the medical use of marijuana.

   **A.** Notwithstanding any other provision of law, a person who is at least 18 years of age may lawfully possess a usable amount of marijuana for medical use if, at the time of that possession, the person has available an authenticated copy of a medical record or other written documentation from a physician, demonstrating that:

   **(1)** The person has been diagnosed by a physician as suffering from one or more of the following conditions:

   **(a)** Persistent nausea, vomiting, wasting syndrome or loss of appetite as a result of:

   **(i)** Acquired immune deficiency syndrome or the treatment thereof; or

   **(ii)** Chemotherapy or radiation therapy used to treat cancer;

   **(b)** Heightened intraocular pressure as a result of glaucoma;

   **(c)** Seizures associated with a chronic, debilitating disease, such as epilepsy; or

   **(d)** Persistent muscle spasms associated with a chronic, debilitating disease, such as multiple sclerosis;

   **(2)** A physician, in the context of a bona fide physician-patient relationship with the person:

   **(a)** Has discussed with the person the possible health risks and therapeutic or palliative benefits of the medical use of marijuana to relieve pain or alleviate symptoms of the person's condition, based on information known to the physician, including, but not limited to, clinical studies or anecdotal evidence reported in medical literature or observations or information concerning the use of marijuana by other patients with the same or similar conditions;

   **(b)** Has provided the person with the physician's professional opinion concerning the possible balance of risks and benefits of the medical use of marijuana to relieve pain or alleviate symptoms in the person's particular case; and

   **(c)** Has advised the person, on the basis of the physician's knowledge of the person's medical history and condition, that the person might benefit from the medical use of marijuana to relieve pain or alleviate symptoms of the person's condition;

   **(3)** The person has disclosed to the physician that person's medical use of marijuana; and

   **(4)** The person is under the continuing care of the physician.

   . . . .

   **C.** Notwithstanding any other provision of law, a designated care giver may lawfully possess a usable amount of marijuana for medical use by an eligible patient if the designated care giver is acting within the scope of the designated care giver's duties to the eligible patient.

   . . . .

   **H.** It is an affirmative defense to prosecution for possession, possession with the intent to furnish, furnishing or cultivation of a usable amount of marijuana under section 2383, Title 15, section 3103 or Title 17–A, chapter 45 that the defendant was a designated care giver under this subsection if the person to whom the marijuana was to be furnished or for whom it was cultivated was an eligible patient.

   22 M.R.S. § 2383–B(5)(A), (C), (H) (2008).

2. The charges were aggravated because Christen had a prior conviction for trafficking.

motion to extend time to file motions; a motion to challenge the validity of the affidavit supporting the search warrant; a motion to represent himself; motions to compel discovery; and a motion to recuse the judge who was scheduled to preside over the case. The State also filed a motion to continue the trial because a sheriff's deputy was unavailable due to a scheduled surgery.

[¶ 4] As a result of the various pre-trial motions and other scheduling conflicts involving the court, Christen's trial did not begin until twenty-seven months after he was indicted. Christen filed two motions to dismiss the charges against him, arguing that his right to a speedy trial had been violated. The court denied his motions, reasoning that a number of different factors led to the delay.

[¶ 5] The trial lasted four days. During a meeting in chambers after the second day, the parties discussed the medical marijuana statute for purposes of resolving evidentiary issues and providing the court with guidance for jury instructions. Among the issues discussed were whether the statute provided an affirmative defense to the trafficking charges and whether Christen was entitled to possess a usable amount of marijuana for each of the "eligible patients" for whom he claimed to be the designated caregiver.

[¶ 6] The following day, the court denied the State's motion that Christen be barred from raising the medical-marijuana defense. The court ruled that Christen could assert that he was entitled to possess a "usable amount of marijuana"[3] for each patient who met the statute's criteria for being an eligible patient. The court ruled, however, that the defense was available only for the cultivation charge, because the medical marijuana statute does not list trafficking as one of the charges for which medical use of marijuana can be claimed or asserted as an affirmative defense.[4]

[¶ 7] The State argued again at the close of the evidence that Christen should be barred from asserting the medical marijuana affirmative defense because he had failed to offer any authenticated medical documents, or testimony from doctors, to prove that he was providing marijuana to people who met the statutory definition of eligible patients. Ruling that Christen had made a sufficient showing to generate an instruction on medical marijuana, the court reasoned:

> We have had testimony or exhibits on virtually every one of the points in [22 M.R.S. § 2383–B(5)], and you could certainly, by putting together pieces of the various testimony and pieces of the various exhibits, could probably come up with an eligible patient and a designated care giver.

[¶ 8] Therefore, the court instructed the jury that it could consider the affirmative defense of medical marijuana as to the cultivation charge, explaining that Christen had the burden to prove the elements of the defense by a preponderance of the

---

3. The medical marijuana statute defines a usable amount of marijuana as "2 1/2 ounces or less of harvested marijuana and a total of 6 plants, of which no more than 3 may be mature, flowering plants." 22 M.R.S. § 2383–B(3)(E) (2008).

4. After the State rested, the court granted Christen's motion for a judgment of acquittal on the second aggravated trafficking charge. The difference between the first and second trafficking charges was that the State could prove the first charge by simply showing that Christen was in possession of more than a pound of marijuana, raising a reasonable inference that he was trafficking. *See* 17–A M.R.S. § 1103(1–A)(E), (3)(A) (2008). The second charge required proof of actual trafficking, and the State had failed to present sufficient evidence to establish that element. *See id.* § 1103(1–A)(H).

evidence. The court carefully explained the elements, including the statutory definitions of eligible patient, designated caregiver, and usable amount of marijuana. The court never specifically told the jurors that a designated caregiver could possess a usable amount of marijuana for each eligible patient. However, the court provided the jury with written copies of 22 M.R.S. § 2383–B to review during their deliberations.

[¶ 9] Christen did not object to the instructions before, during, or after they were given. The jury found Christen guilty of cultivation and not guilty of trafficking.[5] Christen was sentenced to fourteen months, all but six months suspended, and two years of probation.

## II. DISCUSSION

[¶ 10] Christen contends that the court's instructions were erroneous for several reasons. First, he argues that the court erred in instructing the jury that the medical marijuana statute provided an affirmative defense, and that he had the burden to prove it. Second, he argues that the court erred in instructing the jury that the defense could be considered only for the cultivation charge and not the trafficking charge. Lastly, he argues that the court erred by not specifically instructing the jury that the medical marijuana statute permits a designated caregiver to possess a usable amount of marijuana for each eligible patient.

[¶ 11] Although Christen never asked for specific jury instructions, we assume for purposes of this appeal that he intended that his arguments in chambers after the second day of trial would serve as jury instruction requests. However, because Christen did not object to the instructions, our review is limited to obvious error. *See State v. Lockhart*, 2003 ME 108, ¶ 44, 830 A.2d 433, 448. When reviewing jury instructions for obvious error, we will vacate a conviction "only if the instruction constituted a seriously prejudicial error tending to produce manifest injustice." *State v. Perry*, 2006 ME 76, ¶ 15, 899 A.2d 806, 813 (quotation marks omitted). Here, we discern no obvious error.

[¶ 12] Christen's first two contentions, that the jury should not have been instructed that the medical marijuana statute provided an affirmative defense, and that the defense should have been applied to the trafficking charge, require an interpretation of section 2383–B(5). We review questions of statutory interpretation de novo, and when interpreting a statute, "look first to the plain meaning of the statutory language to give effect to legislative intent." *State v. Pierce*, 2006 ME 75, ¶ 21, 899 A.2d 801, 805 (quotation marks omitted). The medical marijuana statute states in relevant part:

> It is an affirmative defense to prosecution for possession, possession with the intent to furnish, furnishing or cultivation of a usable amount of marijuana ... that the defendant was a designated care giver ... if the person to whom the marijuana was to be furnished or for whom it was cultivated was an eligible patient.

22 M.R.S. § 2383–B(5)(H). Because the statute creates an affirmative defense, Christen had the burden of proving that he was a designated caregiver by a preponderance of the evidence. 17–A M.R.S. § 101(2) (2008). An "affirmative defense," unlike a "defense," does not controvert any of the elements of the offense itself. *See State v. Glidden*, 487 A.2d 642, 644 (Me. 1985) (explaining that a defense "can re-

---

5. Because the parties had stipulated prior to trial that Christen had a prior trafficking conviction in 1995, the jury was not privy to this information. The prior conviction elevated the conviction for cultivation to aggravated cultivation.

quire the prosecution to negate applicability of the defense by showing beyond a reasonable doubt the absence of at least one of its essential elements"). To the contrary, an affirmative defense acts as an excuse or justification for the offense and, for that reason, its proof is left to the party who raises it. *See Dixon v. United States,* 548 U.S. 1, 8, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006). The plain language of the statute clearly creates an affirmative defense, but permits its application only to certain charges, and trafficking is not one of them. Therefore, the court did not err when instructing the jury that medical marijuana was an affirmative defense, or instructing the jury that the affirmative defense was applicable only to the cultivation charge.

■ [¶ 13] The court also did not commit obvious error by not specifically instructing the jury that Christen could possess a usable amount of marijuana for each person who qualified as an eligible patient. "We review jury instructions as a whole, taking into consideration the total effect created by all the instructions and the potential for juror misunderstanding." *State v. Cormier,* 2003 ME 154, ¶ 21, 838 A.2d 356, 360 (quotation marks omitted). In this case, the court carefully explained the medical marijuana affirmative defense to the jurors. The court not only read all of the relevant sections of the statute but also provided copies of the statute to the jury during its deliberations. If Christen wanted to emphasize that the statute allowed him to possess a usable amount of marijuana for every eligible patient, he could have highlighted that point in his closing argument.

■ [¶ 14] Finally, we consider Christen's argument that the court should have dismissed the charges because he failed to receive a speedy trial. We review a court's judgment on a motion to dismiss based on a failure to receive a speedy trial

for abuse of discretion. *See State v. Brann,* 292 A.2d 173, 181 (Me.1972). A delay of twenty-two months or more between indictment and trial raises a presumption that the delay was not necessary. *See State v. Hider,* 1998 ME 203, ¶ 17, 715 A.2d 942, 947. However, "we have been reluctant to find violations of the right to a speedy trial unless the delay is *solely* attributable to the State's conduct." *Id.* ¶ 18, 715 A.2d at 947 (emphasis in original). Here, the presumption of an unnecessary delay is rebutted because the delay was largely due to Christen's pre-trial motions, and because Christen has not proved that he suffered prejudice as a result of the delay. *See State v. Drewry,* 2008 ME 76, ¶ 12–13, 946 A.2d 981, 986 (identifying the four factors that we consider when a delay is presumptively prejudicial, namely the length of the delay, the reasons for the delay, the defendant's assertion of his right, and the prejudice to the defendant).

The entry is:

Judgment affirmed.