MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 52
Docket:      Pen-16-214
Argued:      February 7, 2017
Decided:     March 16, 2017
Corrected:   July 27, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DANIEL A. FOX

ALEXANDER, J.

[¶1]  Daniel A. Fox appeals from a judgment of conviction entered by the trial court (Penobscot County, *A. Murray*, *J.*) after a jury found him guilty of unlawful trafficking of scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2014), and unlawful possession of scheduled drugs (Class C), 17-A M.R.S. § 1107-A(1)(B)(1) (2014).[1]  He also appeals a criminal forfeiture in the amount of $543.  *See* 15 M.R.S. § 5826 (2014).

---

[1]  Several statutes cited in this opinion have been amended, or repealed and replaced, since February 11, 2015, the date of the events involved in this appeal.  For purposes of this opinion, the amendments and replacements do not affect our analysis, and all statutory citations herein are to the versions that were current on the date that the crimes occurred.  For example, title 17-A M.R.S. § 1107-A(1)(B)(1) (2014) was amended (effective Oct. 15, 2015), then repealed and replaced by P.L. 2015, ch. 308, § 2 and ch. 496, § 6 (effective July 29, 2016) (codified at 17-A M.R.S. § 1107-A(1)(B)(1) (2016)).

[¶2]  Fox contends that the motion court (*Lucy, J.*) erred in denying his motion to suppress evidence seized during a vehicle inventory search.  He further contends that the trial court erred when it excluded testimony based on hearsay, denied his motion to reopen evidence, concluded that the evidence was sufficient to support forfeiture, and made no express findings on forfeiture.  We affirm the judgments.

## I.  CASE HISTORY

[¶3]  This case arose out of events in Bangor on February 11, 2015, when Fox was observed to be the sole occupant of a vehicle that was found to contain a large quantity of cash and ninety-nine packets of heroin.  Viewed in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt.  *See State v. Morrison*, 2016 ME 47, ¶ 2, 135 A.3d 343.

[¶4]  On February 11, 2015, at approximately 4:00 p.m., a Bangor police officer was dispatched to conduct a welfare check on the single occupant of a vehicle parked at a convenience store.  Upon arrival, the officer found Fox, apparently unconscious, in the driver's seat of the vehicle. The vehicle was running, and the driver's window was partially open.  Fox was wearing a baseball cap.

3

[¶5]  The officer unsuccessfully tried to wake Fox by speaking to him, knocking on the window, and poking him with his baton through the open window.  The officer then unlocked the door, opened it, and gave Fox four to five good shakes.  At that time, the officer observed money on Fox's lap and in the center console, and a pharmacy bag on the front passenger seat.

[¶6]  After being awakened, Fox appeared dazed and was generally evasive in response to the officer's initial questions.  He removed his baseball cap and placed it over something on the front passenger seat.  Fox initially refused to identify himself and then provided his brother's name as his own.  After the officer confronted Fox with photographs of both Fox and his brother, Fox correctly identified himself.  The officer then determined that Fox's vehicle operating privileges were suspended.  The vehicle in which Fox was found was a rental car, rented by another person who Fox refused to identify.  The officer arrested Fox for operating after suspension and providing a false name.

[¶7]  After arranging to have the vehicle towed from the store's parking lot, the officer conducted an inventory search of the vehicle.  The officer testified that he always conducts an inventory search for valuables before

having a vehicle towed, and that he usually waits until after the search to call for the tow.

[¶8]  During the inventory search, the officer collected $543 that had been on the defendant's lap and in the console, drug paraphernalia that was in the pharmacy bag, and ninety-nine packets of heroin in a cigarette pack on the passenger seat under Fox's cap.

[¶9]  Fox was charged by complaint with unlawful trafficking of scheduled drugs (heroin) (Class B), 17-A M.R.S. § 1103(1-A)(A), unlawful possession of scheduled drugs (heroin) (Class C), 17-A M.R.S. § 1107-A(1)(B)(1), unlawful possession of scheduled drugs (clonazepam) (Class E), 17-A M.R.S. § 1107-A(1)(F) (2014), and operating while license suspended (Class E), 29-A M.R.S. § 2412-A(1-A)(A) (2014).  The State also filed a count for criminal forfeiture, 15 M.R.S. § 5826.  He was indicted on the same charges in May 2015.[2]  Fox pleaded not guilty.

[¶10]  Fox moved to suppress the evidence obtained during the inventory search of the vehicle, arguing that there was no lawful basis for the search because the officer had failed to follow the Bangor Police Department's

---

[2]  The indictment was supplemented with a sixth charge alleging unlawful possession of a scheduled drug (Class C), 17-A M.R.S § 1107-A(1)(B)(1), but the State dismissed that charge prior to trial.

5

vehicle inventory search policy.[3]   On January 15, 2016, the motion court (*Lucy, J.*) held a testimonial hearing on Fox's motion.  The evidence consisted of testimony from the Bangor officer, an excerpt of a video from the officer's cruiser camera, and a copy of the Bangor Police Department's vehicle inventory search policy.

[¶11]  The motion court denied Fox's motion to suppress, concluding that the impoundment and inventory search of the vehicle were reasonable and justified in the exercise of legitimate community caretaking functions, and that Maine law authorizes impoundment under such circumstances. *See* 29-A M.R.S. § 105(3) (2014); 29-A M.R.S. § 2069(3) (2014).  To support its conclusion, the court identified specific facts including that Fox did not own or rent the vehicle, could not lawfully operate it, and presented the officer at the scene with no evidence of any authority to control or operate it.

[¶12]  The court further found that the inventory search was initiated according to standard protocol and was not a pretext for concealing an investigatory motive.  Specifically, the court found that the officer followed the vehicle inventory policy because, first, it would have been unreasonable under the circumstances for the officer to grant Fox the authority to release the

---

[3] The State argued that the search was a valid inventory search and conceded that there was no other lawful basis for it.

vehicle to a licensed driver pursuant to subparagraph (a) of the Bangor Police Department's vehicle inventory search policy when Fox had no apparent or demonstrated capacity or authority to release the vehicle, and, second, there was no basis for the officer to advise Fox that he could secure the vehicle and allow it to remain at the scene pursuant to subparagraph (b) of the policy when Fox had not demonstrated authority to be in possession of the vehicle in the first place and the vehicle was not located "in an unrestricted parking area." Fox did not file a motion for findings of fact and conclusions of law. *See* M.R.U. Crim. P. 23(c); *State v. Dodd,* 503 A.2d 1302, 1307 (Me. 1986) (holding that when there is no request for findings and findings are not required by law, we will infer that the trial court found all the facts necessary to support its judgment, if those inferred findings are supportable by the evidence in the record).

[¶13] The court (*Anderson, J.*) held a one-day jury trial on March 18, 2016. The jury found Fox guilty of operating after suspension and not guilty of unlawful possession of a scheduled drug (clonazepam), but deadlocked on the remaining charges. The court declared a mistrial as to the remaining charges.

[¶14]  The court (*A. Murray, J.*) held a two-day jury trial on April 14-15, 2016, on the charges of unlawful trafficking in scheduled drugs (heroin), unlawful possession of scheduled drugs (heroin), and criminal forfeiture.[4] During Fox's opening statement, the State requested two sidebars.  During the first sidebar, the State raised a hearsay objection to Fox referring to an unidentified customer who allegedly told the convenience store employee, who later informed the Bangor officer, that a person had exited the vehicle driven by Fox at some point prior to the employee checking on Fox.  The court ordered that Fox not refer to the unidentified customer's statement during his opening statement and deferred ruling on the admissibility of the evidence.

[¶15]  One of the State's potential witnesses, identified in jury selection, was Benjamin Lam.  The police investigation had identified Lam as the individual who had rented the car.  In an interview with an investigator, Lam had stated that he was not with Fox on the day that Fox was arrested.  During the second sidebar, after Fox had mentioned anticipated testimony of Lam to the jury numerous times, the State warned that it might not call Lam as a witness and that "it's fairly dangerous territory that [Fox] talk about someone's testimony if they haven't testified yet, nor if they know they are

---

[4]  Prior to both trials, Fox requested that the judge decide the criminal forfeiture charge. *See* 15 M.R.S. § 5826(4)(B).

going to be coming in." The court warned Fox that "if [he made] claims that end[ed] up not being true, [he'd be at his] own peril." When the court inquired if Fox was planning to call Lam, Fox replied, "I won't—I probably wouldn't call him."

[¶16]  The State's evidence consisted of testimony from the arresting officer, another Bangor officer, and the convenience store employee who had observed Fox in the car; photographs of the evidence seized during the inventory search; and a portion of the cruiser video.  The arresting officer testified that, during the inventory search, he collected $543 that had been on the defendant's lap and in the console and that he found drug paraphernalia in the pharmacy bag and ninety-nine packets of heroin in the cigarette pack on the passenger seat under Fox's cap.

[¶17]  Prior to the arresting officer's testimony, the parties argued about the admissibility, through the officer, of the statement of the convenience store employee about observation of and a statement by the unidentified customer.[5]  The court concluded that the officer's testimony would be hearsay, and, even if it was not hearsay, the danger of confusion of

---

[5]  Fox noted that the information came in during the first trial with a limiting instruction.  The court stated that it was not bound by decisions made during the first trial and that judges exercise discretion differently.

the issues and unfair prejudice outweighed its probative value, *see* M.R. Evid. 403.[6]

[¶18]   Fox was the only witness for the defense.  He testified to the following: at the time of his arrest, he was employed and made approximately $600 to $700 per pay period; he cashed his paycheck the day before his arrest; he has taken prescription medication for a year and a half—including on the day of his arrest—that causes him to feel sedated; he and Lam went to the convenience store to get food; the car was rented to Lam, but Fox drove it to the store; he gave Lam money for food and fell asleep while counting his money; he lied to the officer about his identity because he knew that he had a suspended driver's license; and he did not know that there were drugs in the car, and the drugs did not belong to him.

[¶19]   After Fox rested and the State presented its rebuttal case, the State informed the court that it would finally rest upon the return of the jury after a recess.  Fox then sought leave to reopen the evidence to call Lam as a witness because the State did not call him.  *See* M.R.U. Crim. P. 26(c).  The State objected.   The court inquired about the purpose of calling Lam and his

---

[6]  After the court's ruling, Fox added that he thought that the statement would be admissible under the rule of completeness.  The court denied Fox's motion for the same reasons and further found that there was no completeness issue resulting from the officer's testimony.

expected testimony. Fox provided an offer of proof indicating that Lam might make statements implicating himself in the drug crimes, admit he may have lied to an investigator when he stated he was not present with Fox on February 11, "and I would like to kind of explore what he was doing then on February 11th if he says he wasn't with Mr. Fox." The court denied Fox's motion to reopen the evidence citing the delay in seeking to call the witness until after the evidence was closed and the professed uncertainty as to what Lam might actually say.

[¶20] The jury found Fox guilty of both criminal charges. The court entered a judgment on the verdict and ordered the criminal forfeiture of the $543 found in Fox's possession at the time of his arrest. The court did not make any findings on the criminal forfeiture charge, and Fox did not move for findings of fact and conclusions of law. Fox was sentenced to four and a half years in prison with all but two and a half years suspended, two years' probation, and fines totaling $800. Fox timely appealed pursuant to 15 M.R.S. § 2115 (2014) and M.R. App. P. 2.

## II. LEGAL ANALYSIS

A.    The Inventory Search

[¶21]  Because Fox was unable to continue operating the vehicle and had no apparent authority to control the vehicle, the Bangor Police Department's vehicle inventory policy was triggered.  The policy states that when the owner/operator of a vehicle is arrested or is physically unable to continue to operate the vehicle, the "investigating officer will adhere to the following procedure," with the "following procedure" consisting of three alternative courses of action.  The first two alternative courses of action do not result in a vehicle search and require the officer to advise the operator of the option to either (a) release the vehicle to a licensed driver who will assume full responsibility for the vehicle, or (b) secure the vehicle and allow it to remain at the scene on the conditions that it will be parked in an unrestricted parking area and that the operator agrees to assume full responsibility for the vehicle.  The third course of action, option (c), applies when the operator is unwilling or unable to choose option (a) or (b), is not competent, or is otherwise unable to make a disposition of the vehicle, and results in a vehicle search and towing.  Under those circumstances, "the

vehicle shall be removed by a department contracted tow vehicle." Prior to towing the vehicle, an inventory search of the vehicle is "standard protocol."

[¶22] Fox contends that the inventory search was invalid because the Bangor officer failed to follow the Department's inventory search and towing policy by deciding to search and tow the vehicle "without having first attempted the less invasive measures required by the policy."

[¶23] "[A] standardized inventory of a lawfully impounded vehicle . . . [is] constitutionally permissible if conducted for 'community caretaking functions' and not as a 'pretext concealing an investigatory police motive.'" *State v. Bickford*, 582 A.2d 250, 251 (Me. 1990) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368-376 (1975)). "The requirement of conformity to a standard practice, or policy, is essential . . . ." *State v. Hudson*, 390 A.2d 509, 511 (Me. 1978). Police may exercise discretion, however, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375-76 & n.7 (1987) (finding no Fourth Amendment violation when police exercised discretion based on standardized criteria related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it).

13

[¶24]    The officer's testimony indicates that his practice of always inventorying and towing vehicles of persons who are arrested does not follow Department policy requiring consideration of alternatives (a) or (b) before deciding to inventory and tow the vehicle.   However, because neither of the first two alternatives (a) or (b) applied to the circumstances at hand, the officer's failure to comply with his department's protocol does not require a suppression of evidence.

[¶25]    The motion court found that there was no reasonable basis for the officer to pursue options (a) or (b) when Fox had no apparent or demonstrated capacity to operate the vehicle, release the vehicle, or assume full responsibility for the vehicle, which was located on the private property of another.    Because Fox was "not competent" and was "otherwise unable to make disposition of [the] vehicle," and, by statute, 29-A M.R.S. § 105(3);[7] 29-A M.R.S. § 2069(3),[8] the vehicle required removal to a suitable parking

---

[7]  Title 29-A M.R.S. § 105(3) (2014) provided, "When a motor vehicle is operated by a person not able to produce a certificate of registration, or by a person other than the person in whose name the vehicle is registered and the operator is unable to present reasonable evidence of authority to operate that vehicle, an officer may impound and hold that vehicle until that vehicle is claimed by the registered owner or until the registered owner verifies the authority of the operator."

[8]   Title 29-A M.R.S. § 2069(3) (2014) provided, "A law enforcement officer may cause the removal to a suitable parking place of a vehicle connected with the arrest of the operator or owner of a vehicle or with the issuance of a summons for a traffic infraction as described in section 2412-A, subsection 8 or used in connection with the commission of a crime."

place, Fox was not prejudiced by the officer's failure to consider alternatives (a) and (b) of the inventory and towing policy.

[¶26]　Under the circumstances, the officer was required to apply alternative (c) in the Bangor Police Department policy and inventory and tow the vehicle.　*See Bickford*, 582 A.2d at 251 (holding that an officer was not required to give a defendant the opportunity to make alternative arrangements for his vehicle when the defendant was arrested for driving with a suspended license and he was alone at the time of his arrest); *State v. White*, 387 A.2d 230, 232-33 (Me. 1978) (concluding that it was reasonable for an officer to deny the defendant an opportunity to make alternative arrangements for the custody of his car when the officer had statutory authority to remove the car from the roadway and the officer and defendant had engaged in a physical "scuffle").

[¶27]　Despite the officer's failure to consciously apply the inventory and towing policy, the court properly denied the motion to suppress.

B.　Double Hearsay

[¶28]　Fox contends that the trial court abused its discretion when it excluded—on the basis that it was hearsay—testimony by the arresting officer regarding what the convenience store employee had told the officer

about a statement made to the employee by an unidentified customer about an unknown person who had exited the vehicle driven by Fox.  Fox argues that the testimony was not hearsay because it was not offered for the truth of the matter asserted, but rather was offered to demonstrate that the investigation was inadequate because the officer did not follow up on the statement.

[¶29]  "We review a trial court's decision to admit or exclude alleged hearsay evidence for an abuse of discretion."  *State v. Vaughan*, 2009 ME 63, ¶ 5, 974 A.2d 930.  "The trial court has broad discretion in determining the admissibility of evidence; however, we will find an abuse of discretion if a party can demonstrate that the trial court exceeded the bounds of the reasonable choices available to it."  *Id.* (citations omitted).

[¶30]  Here, the court provided two independent reasons for excluding the evidence.  First, the court concluded—despite Fox's "creative argument" that the statement was offered to probe the thoroughness of the officer's investigation—that the statement was hearsay.  Fox's offer of proof had indicated a statement by the unidentified person to the convenience store employee, which, relayed through the officer, if offered for its truth, would have been double hearsay.

[¶31]   The court also concluded that, even if the statement was not hearsay, the evidence should be excluded pursuant to Rule 403.  The court reasoned that, even with a limiting instruction, the dangers listed in Rule 403 substantially outweighed the low probative value of the statement.  The court clarified that it was not limiting Fox from questioning the officer about his investigation, but was only prohibiting Fox from asking about the alleged statement by the unidentified customer.  In the circumstances, the court did not abuse its discretion in excluding the statement either as hearsay or pursuant to Rule 403.

C.    Reopening the Evidence

[¶32]   Fox argues that the trial court abused its discretion when it denied his motion to reopen evidence to call Lam as a witness.  "A party who has rested a case cannot thereafter produce further evidence except in rebuttal unless by leave of court."  M.R.U. Crim. P. 26(c).  We "review rulings on motions to reopen evidence for an abuse of discretion."  *State v. Chasse*, 2000 ME 90, ¶ 10, 750 A.2d 586.  Here, in light of the uncertainty as to what Lam might actually have testified to, the potential that the court might have had to allow Lam to consult with counsel before offering testimony that might implicate him in several crimes, and the delay that the request to reopen the

evidence would have entailed, the trial court did not abuse its discretion when it denied Fox's motion to reopen the evidence.

D.     Evidence Supporting Forfeiture

[¶33]  Fox contends that the trial court erred in ordering the forfeiture of $543 found in Fox's possession at the time of his arrest because the court did not make any findings, the State offered insufficient evidence that Fox engaged in or intended to engage in a drug transaction, and there was no evidence that the money was related to a drug transaction.

[¶34]  When a defendant does not request findings of fact on an issue decided by the trial court, we will infer that the trial court found all facts necessary to support its conclusion, if support for those inferred findings can be identified in the record.  *State v. Connor,* 2009 ME 91, ¶ 9, 977 A.2d 1003; *Dodd*, 503 A.2d at 1307; *see* M.R.U. Crim. P. 23(c).

[¶35]  The criminal forfeiture statute states that "a person convicted of a violation of Title 17-A, chapter 45 [addressing drug crimes] forfeits to the State all rights . . . to property that is subject to forfeiture pursuant to section 5821."  15 M.R.S. § 5826(1).  Section 5821 provides that "all money . . . furnished or intended to be furnished by any person in exchange for a scheduled drug in violation of Title 17-A, chapter 45; all proceeds traceable to

such an exchange; and all money . . . used or intended to be used to facilitate any violation of Title 17-A, chapter 45," are subject to forfeiture.  15 M.R.S. § 5821(6) (2014).

[¶36]  Contrary to Fox's contentions, the court was not required to "make findings as to which of the[] three independent theories [under the statute] it found to be persuasive."  *See* M.R.U. Crim. P. 23(c); *State v. Gatcomb*, 389 A.2d 22, 24 (Me. 1978).  The court made a general finding supporting forfeiture of the recovered cash pursuant to Rule 23(c); Fox did not request findings of fact.  Thus, the court did not err when it did not make further factual findings.

[¶37]  There is competent evidence in the record to support a finding, by a preponderance of the evidence, that the cash was subject to forfeiture. *See* 15 M.R.S. § 5826(4)(A).  The court could have found that the cash was the result of illegal activity based on evidence, including the officer's initial observation of Fox's apparently drug-induced unconsciousness; Fox's removal of his baseball cap to conceal the drugs and drug paraphernalia; Fox's refusal to identify himself or the renter of the vehicle; the amount of heroin; the amount of cash; Fox's reaction to the officer's search of the vehicle; and the proximity of the heroin and the cash to Fox.  The officer's testimony that he

did not observe Fox selling any drugs did not require the court to deny the State's request for forfeiture. *Cf. State v. Pierce*, 2006 ME 75, ¶ 23, 899 A.2d 801 (finding that the plain language of the statute does not limit forfeiture to money that is traceable to the particular drug transaction or the possession that led to the conviction). The trial court did not err when it ordered the forfeiture of Fox's money.

The entry is:

Judgments affirmed.

---

James M. Mason, Esq. (orally), Brunswick, for appellant Daniel A. Fox

R. Christopher Almy, District Attorney, Susan J. Pope, Asst. Dist. Atty., and Tracy Collins, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2015-557
FOR CLERK REFERENCE ONLY